Michael J. Frevola
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
SK ENERGY EUROPE LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| SK ENERGY EUROPE LTD.,<br><br>             Plaintiff,<br><br>       -against-<br><br>PROJECTOR S.A. and<br>PROJECTOR ASIA PTE LTD.,<br><br>          Defendants. | 08 Civ. _____<br><br>**VERIFIED<br>COMPLAINT** |

The plaintiff SK Energy Europe Ltd. ("SKEE"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against the defendants Projector S.A. ("PSA") and Projector Asia Pte Ltd. ("PLTD") (collectively "Defendants"), alleges as follows:

1.     This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.    At all times material herein, SKEE was and is a business entity organized and existing under the laws of the United Kingdom with a place of business at 3rd Floor, 11-12 Hanover Street, London W1S 1YQ, United Kingdom.

3.    Upon information and belief, at all times material herein, PSA is and was a business entity organized and existing under the laws of Belize with an address at 35A Regent Street, Belize City, Belize.

4.    Upon information and belief, at all times material herein, PLTD is and was a business entity organized and existing under the laws of Singapore with an address at 2 Battery Road, #22-01 Maybank Tower, Singapore 049907.

5.    Upon information and belief, at all times material herein, PSA and PLTD act interchangeably on each other's behalves and have an alter-ego relationship.

6.    On April 14, 2008, PSA chartered the vessel DYNAMIC EXPRESS (the "Vessel") from its disponent owner SKEE by a voyage charter based on the ASBATANKVOY form (the "Charter") for a voyage from Dalian, China to named safe ports in Korea. A true copy of the Charter's fixture recap and additional rider terms are annexed as Exhibit 1. SKEE was an intermediate level charterer, having chartered the Vessel itself from Mitsui O.S.K. Lines "MOSK").

7.    The Vessel was chartered to carry a cargo of naphtha (the "Cargo") purchased by PLTD. PLTD provided to the seller a letter of credit opened by ING Bank Belgium ("ING") in favor of the seller in the amount of the price of the Cargo (the "LOC"). A true copy of the LOC documentation is annexed as Exhibit 2. The LOC did not require the presentation of original bills of lading ("BOL") for the bank to release payment for the Cargo.

2

8.    On April 29, 2008, the Vessel arrived at the discharge port before the BOL arrived. PSA requested that MOSK deliver the Cargo to its receivers. MOSK complied and delivered the Cargo to the receivers in return for a letter of indemnity issued by SKEE ("SKEE/MOSK Letter of Indemnity"). A true copy of the SKEE/MOSK Letter of Indemnity is annexed as Exhibit 3. Pursuant to the SKEE/MOSK Letter of Indemnity, SKEE agreed to hold MOSK harmless from claims arising out of delivering the Cargo without the presentation of the BOL.

9.    In order for the Cargo to be discharged, a similar letter of indemnity had to be issued by PSA to SKEE ("PSA/SKEE Letter of Indemnity"), which would serve to hold SKEE harmless from claims arising out of delivering the cargo without presentation of the BOL. A true copy of the PSA/SKEE Letter of Indemnity is annexed as Exhibit 4. The PSA/SKEE Letter of Indemnity is signed by PLTD.

10.    The seller (SK Energy International Pte. Ltd.) of the cargo was paid in full by BNP Paribas Bank and BNP Paribas Bank was paid in full by ING as provided for under the LOC. PLTD, however, failed to pay ING. Upon information and belief, ING now holds the BOL for the Cargo.

11.    As a result of PLTD's failure to pay ING, ING has made a demand to MOSK – the shipowner and issuer of the BOL, which is now believed to be in ING's possession – that MOSK pay for the Cargo on the basis that it delivered the Cargo to the receivers who did not have the BOL.

12.    Earlier today, June 10, 2008, ING applied for a court order from the Singapore court to arrest the Vessel, which arrived in Singapore today. ING obtained the court

3

order and has now arrested the Vessel. A true copy of the arrest papers filed by ING in the Singapore court are annexed as Exhibit 5.

13.    In light the threatened arrest of the Vessel, MOSK had demanded to SKEE that it post security to prevent the arrest of the Vessel and/or to release the Vessel from arrest. The amount of security required to release the Vessel from ING's arrest is US$33,034,326.00. A true copy of a letter from earlier today from ING's Singapore attorneys regarding the amount of security demanded is annexed as Exhibit 6. SKEE now is arranging to provide the referenced security in the Singapore court proceeding.

14.    Under the terms of the PSA/SKEE Letter of Indemnity, the Defendants are obligated to indemnify SKEE from liability arising out of the discharge of the cargo without the BOL. Furthermore, the PSA/SKEE Letter of Indemnity expressly provides that the Defendants shall on demand provide bail or other security to prevent the arrest of detention of the Vessel.

15.    On June 5, 2008, SKEE wrote to PSA and PLTD to demand that it honor its obligations to provide, amongst other things, bail or security in light of the threatened arrest of the Vessel in Singapore. A true copy of SKEE's letter to PSA and PLTD dated June 5, 2008 is annexed as Exhibit 7. PSA and PLTD have failed to respond to this demand.

**PSA's and PLTD's Alter-Ego Relationship**

16.    PSA and PLTD have an identical address and telephone numbers in Singapore, as can be shown by the D&B cover pages annexed as Exhibit 8.

17.    PSA and PLTD act interchangeably on each other's behalves in guaranteeing or arranging for financing of the other's transaction as evidenced by the PSA/SKEE Letter of Indemnity where PLTD provided indemnity to SKEE for and on behalf of PSA.

18.    PLTD is controlled by PSA and used as a corporate shell by PSA to avoid liability and to defraud creditors.

**Requested Relief**

19.    From information received from MOSK regarding ING's claim under the BOL, ING seeks to recover US$33,034,326.00 from MOSK pursuant to the LOC.

20.    Pursuant to the MOSK/SKEE Letter of Indemnity, SKEE is required to post security in the amount of US$33,034,326.00 in order to release the arrest of the Vessel.

21.    Pursuant to the PSA/SKEE Letter of Indemnity, the Defendants have agreed to indemnify and hold SKEE harmless from any liability, and because SKEE is required to post security in the amount of US$33,034,326.00 in order to release the arrest of the Vessel, the Defendants shall also be subject to liability to SKEE and required post corresponding security for SKEE's claims.

22.    Upon information and belief, it will take 3 years for SKEE to prosecute this claim against the Defendants to its completion.  The PSA/SKEE Letter of Indemnity and the Charter both are governed by English law.

23.    Under English law, if these disputes go forward in England, SKEE is entitled to receive its interest, expenses and reasonable attorneys' fees for prosecuting its claims to completion, which amount is estimated to be US$ 5,071,289.52  as set forth below:

| | |
|---|---|
| Interest: | $ 4,955,148.90 ($33,034,326.00 x 5% p.a. x 3 years) |
| Attorneys' Fees: | $   600,000.00 |
| Total Principal Claim: | $33,034,326.00 |
| Total Sought: | **$38,589,474.90** |

5

24.    Therefore, as a result of the foregoing, SKEE has and will suffer damages in the amount of US$38,589,474.90, including estimated interest, attorneys' fees and expenses.

25.    Neither PSA nor PLTD is found within the Southern District of New York but do have goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, are claimed by them, is being held for them or on their behalf, or which is being transferred for their benefit, within the jurisdiction and held in the name(s) of Projector S.A. and/or Projector Asia Pte Ltd. with, upon information and belief, the following financial institutions:    Bank of America, N.A.; Bank of China; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular; Bank of Tokyo-Mitsubishi UFJ Ltd. or any other financial institution within the Southern District of New York.

**WHEREFORE**, SK Energy Europe Ltd. prays:

1.    That a summons with process of attachment and garnishment may issue against the Defendants Projector S.A. and Projector Asia Pte Ltd.; and if Defendants cannot be found, then that their goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, is claimed by them, is being held for them or on theirs behalf, or which is being transferred

6

for their benefit, within the district may be attached in an amount sufficient to answer SK Energy Europe Ltd.'s claim;

2.    That the Defendants and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.    That judgment be entered in favor of SK Energy Europe Ltd. against the Defendants, jointly and severally, in the amount of US$38,589,474.90 (including estimated interest, expenses and attorneys' fees); and

4.    That this Court grant SK Energy Europe Ltd. such other and further relief which it may deem just and proper.

Dated: New York, New York
        June 10, 2008

HOLLAND & KNIGHT LLP

By: _____
    Michael J. Frevola
    Lissa Schaupp
    195 Broadway
    New York, NY 10007-3189
    Tel:    (212) 513-3200
    Fax:    (212) 385-9010

    *Attorneys for Plaintiff*
    *SK Energy Europe Ltd.*

## **VERIFICATION**

STATE OF NEW YORK ) 

                                 :ss.:

COUNTY OF NEW YORK )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for SK Energy Europe Ltd. ("SKEE"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by SKEE and corresponded with SKEE's representatives regarding this matter. I am authorized by SKEE to make this verification, and the reason for my making it as opposed to an officer or director of SKEE is that there are none within the jurisdiction of this Honorable Court.

_____
Michael J. Frevola

Sworn to before me this
10th day of June, 2008

_____
Notary Public

Linda M. Wilkens
Notary Public, State of New York
No. 01WI9672455
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 30, 2010____

# 5397251_v1

8

# EXHIBIT 1

**From:** JGLEE [mailto:nautica@nauticaship.co.kr]
**Sent:** Tuesday, April 15, 2008 3:51 PM
**To:** projectorkorea; Freight Trading 팀; naphtha@skcorp.com; 배정권/Freight Trading 팀(JUNGKWON

BAE); 조윤신 대리님

**Cc:** 노티카

**Subject:** (Revised) PRO EMERALD OOS ASASHIO MARU OOS DYNAMIC EXPRESS / PROJECTOR - CP
DD 14TH APR 2008

```
TO      PROJECTOR SEOUL
ATTN    MR. KEVIN SHIN/ MANAGER
        MR. DJ KIM/ A. MANAGER

CC      SK ENERGY CO LTD
ATTN    MR. MT EOM/ A. MANAGER
        MR. DAVID PARK

CC      FREIGHT TRADING TEAM/ SK ENERGY CO., LTD
ATTN    MR. JK BAE - MANAGE

CC      SK SHIPPING PTE LTD.
ATTN    MR.YS CHO/ A. MANAGER

FM      NAUTICA SHIPPING CO.,LTD / JG LEE

(REVISED CLEAN FIXTURE RECAP)

RE PRO EMERALD OOS ASASHIO MARU OOS DYNAMIC EXPRESS/PROJECTOR -
CP DD 14TH APR 2008 - CLEAN FIXTURE RECAP
==========================================

THANK YOU FOR YOUR SUPPORT.
PLEASED TO CONFIRM CHTRS LIFTED ALL SUBS IN TIME, AND VESSEL
CLEAN FIXED AS PER FOLLOWING TERMS AND CONFITIONS.

+++++++++  STRICTLY PRIVATE AND CONFIDENTIAL  ++++++++++++

- ACCOUNT : PROJECTOR S.A. OR IT'S GUARANTEED NOMINEE
- OWNERS  : SK ENERGY EUROPE LTD AS DISPONENT OWNERS

- VESSEL    : PRO EMERALD
<<Q88.doc>>
 FLAG       : PANAMA
 BUILT      : 2003
 SDWT       : 46,101 MT
 DRAFT      : 12.022 M
 LOA        : 179.88 M
 BEAM       : 32.228 M
 KTM        : 46.382 M
 TPC        : 50.65
 CUBIC CAP  : 50,753.49 CBM AT 98 PCT EXCL SLOPS
 SLOPS      :  1,745.97 CBM AT 98 PCT
 COATED     : EPOXY
 SWL        : 1 X 20 MT
 BCM        : 91.29 M
 CLASS      : KOREAN REGISTER
 P&I CLUB   : BRITANNIA
 BALLAST    : SBT
 L3C        : GO / NAPTHA / NAPTHA
 APPROVALS  : TBOOK EXXON / SHELL
```

```
ITINERARY :
ETA DAESAN  13TH APRIL 2008 FOR DISCHARGE
ETD DAESAN  15TH APRIL 2008
ETA YOSU    16TH APRIL 2008 FOR LOADING
ETD YOSU    20TH APRIL
ETA XIAMEN  22TH APRIL FOR DISCHARGE
ETD XIAMEN  24TH APRIL
ETA DALIAN  27TH APRIL FOR LOADING
ABOVE SUBS ALL GOES WELL AND WEATHER PERMITTING
```

OR OWNERS OPTION MT ASASHIO MARU

```
- VESSEL   : M/T ASASHIO MARU
             JAPANESE FLAG, BUILT 1998
             41,997 MTS DWT ON 11.666 M SDRAFT
             CAPA 50,322.8 CBM AT 98PCT EXCLUDING SLOP TANKS
             LOA 182.5 M, BEAM 32.225 M
             IGS/SBT/EPOXY COATED
             L3C : NAP/GO+GASOLINE+JET/GASOLINE

             ITINERARY : IAGW, SP
             ETCD KAWASAKI 22/APR, ETA DALIAN 26/APR
```

OR OWNERS OPTION MT DYNAMIC EXPRESS

```
- VESSEL   : M/T DYNAMIC EXPRESS
             PANAMNIAN FLAG, BUILT 1993
             42,253 MTS DWT ON 11.567 M SDRAFT
             CAPA 47,501.1 CBM AT 98PCT EXCLUDING SLOP TANKS
             LOA 179.79 M, BEAM 31.3 M
             IGS/SBT/EPOXY COATED
             L3C : JET/NAP/MOGAS

             ITINERARY : IAGW, SP
             ETCD HKONG 18/APR, ETA DALIAN 22/APR
```

```
- CARGO    : CHARTERERS OPTION UPTO FULL CARGO, MAX 2 GRADE(S) CLEAN
             PETROLEUM PRODUCTS, WITHIN VESSEL'S NATURAL SEGREGATION,
             UNLEADED, UNDARKER THAN 2.5 NPA, ALWAYS EXCLUDING LUBES,
             CHEMICALS, SOLVENTS, MTBE AND CASINGHEADS.

- LOAD     : ONE SAFE PORT DALIAN, PRC

- DISCHARGE: TWO SAFE PORTS DAESAN FOLLOWED BY ONSAN, SKOREA

- LAYCAN   : 27TH - 28TH APRIL 2008 (0001HRS-2359HRS)

- FREIGHT  : LUMPSUM USD 300,000 FOR 1/1 (DAESAN)
             LUMPSUM USD 350,000 FOR 1/2 (DAESAN F/B YOSU-ULSAN RANGE)

- DEMURRAGE: USD 22,500 PER DAY PRO RATA

- LAYTIME  : TOTAL 84 HOURS

- ASBATANKVOY C/P
- WORLDSCALE TERMS AND CONDITIONS.
- CHARTERERS AGENTS AT BOTH ENDS PROVIDED COMPETITIVE.
- BIMCO ISPS CLAUSE TO APPLY.
- YORK/ANTWERP RULES 1974 AS AMENDED 1994.
- GENERAL AVERAGE/ARBITRATION LONDON ENGLISH LAW TO APPLY.
```

- ANY TAXES AND/OR DUES ON CARGO AND/OR FREIGHT TO BE FOR
  CHARTERERS' ACCOUNT.
- S.KOREA ANCHORAGE DUES FOR AWAITING BERTH, FIRST 48 HOURS
  FOR OWNERS' ACCOUNT, THEREAFTER FOR CHARTERERS.
- JAPANESE SPEAKING SUPERINTENDENT AT DISCHARGE PORT, IF REQUIRED,
  TO BE FOR OWNER'S ACCOUNT, AND TO BE NOMINATED BY OWNERS. - N/A FOR THIS
  VOYAGE
- OWNERS TO SUBMIT G/A PLAN, CAPACITY PLAN AND PIPING DIAGRAM AT
  OWNERS COST IF REQUESTED BY JAPANESE TERMINAL. - N/A FOR THIS VOYAGE
- OWNERS' CANCELLATION CLAUSE
  ----------------------------
  IF IT BECOMES OBVIOUS TO THE OWNERS THAT THE VESSEL WILL NOT
  MEET HER CANCELLING DATE, OWNERS TO NOTIFY CHARTERERS OF
  VESSELS ETA AND PROPOSED NEW CANCELLING DATE.
  CHARTERERS HAVE THE OPTION TO CANCEL THE CHARTER WITHIN 48 WORKING
  HOURS OF NOTICE OR EXTEND IN ACCORDANCE WITH OWNERS NEW PROPOSED
  CANCELLING DATE. IF CHARTERERS DECIDE TO CANCEL THE CHARTER,
  IT SHALL BE WITHOUT ANY FURTHER LIABILITIES TO EITHER PARTY.
  IF CHARTERERS DO NOT CANCEL THE CHARTER WITHIN 48 WORKING HOURS
  AFTER RECEIPT OF OWNERS NOTICE, THE C/P IS MAINTAINED ON BASIS
  OF THE NEW CANCELLING DATE PROPOSED BY THE OWNERS.
- WAITING DOCUMENTS AFTER HOSE OFF UPTO 3 HOURS TO BE FOR OWNERS ACCOUNT,
  THEREAFTER TO BE FOR CHARTERERS' ACCOUNT.
- VESSEL IS A MEMBER OF ITOPF THROUGHOUT C/P.
- VESSEL SHALL PERFORM LADEN PASSAGE AT ABOUT 13.5 KNOTS WEATHER AND SAFE
  NAVIGATION PERMITTING.
- FREIGHT PAYABLE IN US DOLLARS BY T.T TO OWNER'S DESIGNATED BANK ACCOUNT.
- CONOCO WEATHER CLAUSE (AMENDED)
  DELAYS IN DIRECT BERTHING FOR LOADING AND/OR DISCHARGING AND DELAYS
  AFTER BERTHING WHICH ARE DUE TO WEATHER AND/OR SEA CONDITIONS SHALL
  COUNT AS ONE-HALF LAYTIME OR IF VESSEL IS ON DEMMURAGE AS ONE-HALF
  DEMMURAGE RATE. ANY ASSOCIATED COSTS SHALL BE SHARED EQUALLY
  BETWEEN CHARTERES AND OWNERS.

- SK RIDER CLS 1-7 (1-24) - 2008 ,
  DEEMED INCORPORATED WITH FOLLOWING AMENDMENTS:-

3. DELETE AND INSERT
   Chevron War Risk Clause   (Amended)
   --------------------------------
   Any increase of hull and  machinery war risk premiums, and crew
   war bonus over and above those in  effect at 1800hours Seoul
   time on (date of fixing)  will be for Charter's account.
   Any premiums, or increase  thereto, attributable to closure
   (i.e. blocking and  trapping) insurance shall be for Owner's
   account.
   Surcharges which  are in effect at 1800 hours Seoul time  on
   (date of fixing) are for Owner's account.
   First 7  days war risk premium and surcharges as in effect
   at 1800 hours Seoul time on  (date of fixing) shall be for
   Owner's account,  thereafter for Charterer's account.
   First 7 days to be calculated from  vessel's entering
   War Risk area.
   H+M VALUE -  ( -  -  -  - )

4. DELETE AND INSERT 'VESSEL TO PERFORM  LADEN VOYAGE AT
   ABOUT 14.0 KNOTS  WSNP.'

7-4)2ND PARA LINE 4 AFTER 'DISCHARGE' INSERT 'AT CHARTERER'S  TIME'
     3RD PARA, DELETE

3

7-6-a)LAST PARA AT END, INSERT 'IF CHRTS AND/OR PORT AUTHORITY
      ORDERED VESSEL TO WAIT AND/OR ANCHORED AT JANGANSEO,
      VESSEL TENDERING N.O.R AT JANANSEO'

7-6-c)delete 2nd sentence in insert
      "In case vessel to shift due to bad  weather, related
      deberthing/re-berthing expenses  to be split (50/50)
      between Owners and  Charterers"

7-6-d)DELETE AND INSERT 'ANY TIME LOST AS A  DIRECT RESULT OF
      MASTER/VESSEL/OWNERS'  FAULT, SHALL NOT COUNT AS LAYTIME OR
      TIME ON DEMURRAGE

7-6-f)LAST SENTENCE - AFTER  "SHALL BE" ,  INSERT " 50% OF "

7-7)ADD AT BEGINNING 'WHEN/WHERE  APPLICABLE'

7-9) PARA 2 DELETE 'OWNERS GUARANTEE THAT' AND  INSERT
     'TO THE BEST OF OWNER'S  KNOWLEDGE'

7-13)LINE 1 DELETE 'OWNERS THAT' AND INSERT 'TO THE  BEST
     OF OWNER'S KNOWLEDGE'

7-15)DELETE,  N/A

7-16)LINE 3 AFTER 'PARTIES' INSERT 'IF  POSSIBLE'
     LINE 5 AFTER '90 DAYS' INSERT 'FOR  DEMURRAGE AND 150 DAYS
                    FOR OTHER   FEES'
     ADD AT END 'CHTRS TO THEIR BEST  ENDEAVOR TO PAY ALL UNDISPUTED
     DEMURRAGE WITHIN  90 DAYS OF RECEIPT OF OWNERS' CLAIM'

7-17)3RD LINE BEFORE 'AS PER' INSERT 'AND OWNER'S P&I CLUB WORDING'

7-20)1st line DELETE '0.3%' and insert '0.5%'

7-22)1st para - insert at end
     " CHARTERERS WARRANT THAT THERE IS NO PROHIBITION OR RESTRICTION
     ON STS OPERATION AT THE PORT/PLACE TO WHICH THE VESSEL IS ORDERED
     TO PERFORM STS TRANSFER AND  FURTHER THAT THEY HAVE OBTAINED
     ANY/ALL NECESSARY  LOCAL APPROVAL'S OR LICENSE'S TO CARRY OUT
     OPERATIONS  AT THE DESIGNATED PORT/PLACE."

7-23)Superintendent Clause ay Korean Port
     1st line - after "if requested by charterer," insert "in case the
     ship calls first time at the port during last 12 months or
     new building, "
     2nd line - delete "2500", insert "2000"

- COMMISSION:
   - 1.25 PCT ADDCOM ON FREIGHT/DEMURRAGE FOR CHARTERERS
     AND TO BE DEDUCTIBLE AT SOURCE.
   - 1.25 PCT COMM ON FREIGHT/DEMURRAGE FOR NAUTICA SHIPPING

END RECAP.

THANKS VERY MUCH FOR YOUR WARM SUPPORT.

BEST REGARDS/JG LEE

Nautica Shipping Co., Ltd. Tel: 82-2-6377-1155  Fax: 82-2-6377-1160
E-mail: nautica@nauticaship.co.kr

```
Add : #2303 Renaissance Tower, 456 Gongduk-Dong, Mapo-Gu, Seoul
      Korea, 121-020

JG Lee : Mob: 82-11-9881-8071 AOH:82-2-2643-8071 Yahoo: jglee_nautica
Jin Kim: Mob: 82-18-553-5225  AOH:82-31-520-6527 Yahoo :jin_nautica
JE Kim : Mob: 82-10-6310-1992 AOH : N/A          Yahoo: kim_nautica
SI Shin: Mob: 82-16-440-9456  AOH:82-2-337-3602  Yahoo: inny81_nautic
```

**SK Energy. Rider 2008**

**M. SPECIAL PROVISIONS 1-7 (1-24) WITH AMENDMENTS :**

1.    York/Antwerp Rules 1974 as amended 1994 to apply.

2.    **ITOPF**, Owners warrant that the vessel is now and throughout the duration of this charter will be
i) Owned or demise chartered by a member of the international tanker Owners pollution federation ltd. And
ii) Entered in the P and I club stated in the questionnaire version 2

3.    Present war risk insurance premium and/or crew war bonus for the first 14 days for Owners' account. Any increase and/or extended period for Charterers' account.

4.    Owners to have the option to slow steam down to about 13.5 knots, weather and safe navigation permitting. But in case vessel is able to berth/load at load port two (2) days earlier than lay/can days at Charterers' cooperation, then Owners to agree to speed up the vessel to 14.5 knots, weather and safe navigation permitting at maximum without any additional costs to Charterers if Charterers so require.

5.    The vessel to proceed in laden via Malacca and Worldscale rate via Malacca to apply.

6.    Charterers' option to nominate agents at load/discharge ports at Owners' expense at competitive costs.

7.    The following **SK Energy** Terms to apply:-

1)    **WORLDSCALE** Terms and conditions to be applied, unless otherwise provided in the Charter Party.

2)    **CARGO RETENTION CLAUSE**

In the event that any cargo remains on board upon completion of discharge, Charterers shall have the right to claim an amount equal to the F.O.B. port of loading value of such cargo plus freight due with respect thereto, provided that the volume of cargo remaining on board is liquid pumpable and reachable by vessel's fixed pumps as determined by an independent surveyor. Any action or lack of action in accordance with this provision shall be without prejudice to any rights or obligations of the parties.

3)    **BILL OF LADING CLAUSE**

If the Original Bills of Lading are not presented by Charterers at the discharge port, cargo to be released by Owners against a Letter of Indemnity signed by Charterers. However, the wording of such Letter of Indemnity to be in Owners' P and I Club wording, without bank guarantee.

4)    **INERT GAS SYSTEM CLAUSE**

Owners warrant that the vessel has a working Inert Gas System and Officers and Crew are experienced in the operation of the system. Owners further warrant the vessel will arrive at load port with cargo tanks inerted and that tanks will remain inerted throughout voyage and during discharge.

Master may be requested by Terminal personnel or independent inspectors to breach the I.G.S. for purpose of gauging, sampling, temperature determination and/or determining the quantity of cargo remaining on board after discharge.   Master shall comply with these requests consistent with the safe operation of the vessel.

The Charterers shall not be liable for any damage for delays resulting from non-compliance with this clause.

5)    **PUMPING CLAUSE**

The vessel shall discharge entire cargo within 24 hours or maintain an average 100 P.S.I. excluding stripping but max 3 hours   at ship's manifold provided shore facilities permit. If the vessel fails to perform as above and demurrage incurred, any pumping time in excess of 24 hours shall not count as used laytime. Owners shall exert their efforts in achieve full and complete discharge of cargo.

6)    **LAYTIME CLAUSE**

Further to the relevant clauses of the Charter Party. Laytime to be calculated based on following clauses:

**a. Korean Port(s) Laytime Clause:**
In case the vessel arrives at quarantine at Korean Port(s) and tender N.O.R. to discharge (load) between 1600hours and 2400 hours, laytime to count at 0600 hours the next day. In such case Owners to adjust speed for the vessel to arrive at Korean Port(s) 0600 hours the next day.
In case that charterer declare Inchon as loading or discharging port, Master shall tenrder N.O.R. at Palmido pilot station.

**b. Shifting time** from anchorage to 1st berth not to count as used laytime or as demurrage time even if laytime  has   expired. Shifting from berth to berth to count as used laytime.Deballasting/ballasting time concurrent with  loading/discharge shall count as used laytime.

**c.** Delays in berthing for loading or discharging and any delays after berthing which are due to weather condition shall count as one half laytime or, if demurrage, at one half demurrage rate.
    However, if discharge via a sealine / sea terminal transfer takes place at any location, any delays owing to weather / sea conditions to count in half as used laytime or demurrage rate.

**d.** Any delay in waiting for loading/discharge due to Owners/Master/the vessel's conditions and/or faults not to count as used laytime.

**e.**    Charterers shall have the benefit of 6 hours for N.O.R. in all ports even if the vessel is on demurrage.

**f.** Laytime shall not commence before 0600 hours on the first day of laydays without Charterer's consent. If vessel is able to, and Charterers so instruct, the vessel shall load earlier than commencement of laydays and the following shall apply:
    Charterers shall have the benefit of such time saved, such benefit shall be the time between commencement of loading until the commencement of the original laydays.

**g.** The concept of "once on demurrage, always on demurrage" not to apply to this Charter Party.

7)    **ETA CLAUSE**

Master and/or Owners to give Charterers/Terminal ETA loading port immediately after fixing and further ETA discharge port upon sailing from loading port.    Masters and/or Owners to give Charterers/Terminal additional ETA's 7 days and 72/48/24 hours before arrival at loading and discharge ports respectively. Any change exceeding 12 hours in given ETA's to be cabled immediately and any time lost by failure to comply with required ETA notices not to count as used laytime, where applicable.

8)    **CLC CERTIFICATE CLAUSE**

Owners warrant the vessel has on board a valid certificate as required by Article VII of the International Convention on Civil Liability for Oil Pollution of 1969 as amended. The Charterers shall not be liable for any demurrage for delays, expenses or damages resulting from non-compliance of this clause.

9)    **ELIGIBILITY CLAUSE**

Owners warrant that the vessel is in all respects eligible under applicable laws and regulations for trading to the ports and places specified in Part I, (C) and (D), and that at all necessary times she shall have on board all certificates, records and other documents required for such a service.

Owners guarantee that the vessel is fully equipped/suitable for the ports and places specified in Part I, (c) and (d), and any delay/expenses caused by the vessel's failure to comply with this clause to be for Owners' account.

10)    **CLEANING CLAUSE**

Whilst loading, carrying and discharging the cargo the master shall at all times keep the tanks, lines and pumps of the vessel always clean for the cargo. Also, the vessel shall present for loading with cargo tanks ready and, subject to the following paragraphs, if vessel is fitted with Inert Gas System ("IGS"), fully inerted. Charterers or it's inspectors shall have the right to inspect vessel's tanks prior to loading and the vessel shall abide by Charterers' instructions with regard to tank or tanks which the vessel is required to present ready for entry and inspection. If Charterer's inspector is not satisfied with the cleanliness of the vessel's tanks, Owners shall clean them in their time and at their expense to the satisfaction of Charterers' inspector. If the vessel's tanks are inspected and rejected, time used for de-inerting shall not count towards laytime or demurrage, and laytime or demurrage time shall not commence or recommence, as the case may be, until the tanks have been re-inspected, approved by Charterers' inspector, and re-inerted. In addition, if as a result of such causes and events the vessel loses its turn to berth, laytime and demurrage shall be suspended until it regains the same berthing position.
If such causes or events occurs while the vessel is in berth, extra expenses shall be for Owner's account and Charterer shall also have the option to order the vessel out of berth, so as to avoid delay to other vessels waiting to use the berth, with the cost of unberthing and reberthing for this purpose to be for Owner's account. Time lost in between berthings shall not count as laytime or demurrage.

11)    **P AND C CLAUSE**

This fixture to be kept private and confidential.

12)    **SLOP OIL CLAUSE**

Load on top procedures is not applicable and no freight on slops and Charterers    not to be responsible for disposal of slops at loading and discharging ports.

13) Owners hereby guarantee that the vessel is not blacklisted by countries which load/discharge ports are located in.

14) The vessel shall comply with International Chamber of Shipping, OCIMF (Oil Companies International Marine Forum) and ISGOTT (International Safety Guide For Oil Tankers and Terminals) 1984.

15)    **OVERAGE INSURANCE CLAUSE**

Any extra insurance premium that may be incurred due to the age, flag or Ownership of the

vessel shall be for Owners' account on the condition that Charterers can provide to Owners sufficient documentation to support such a charge, such additional premium, if any, shall be paid by Owners to Charterers' designated bank account by telegraphic transfer within twenty(20) days upon receipt of Charterers' invoice.

16)    **DEMURRAGE TIME BAR CLAUSE**

Owners agree that Charterers shall be released from all the liabilities in respect of demurrage and/or all other fees unless any claim incurred under this Charter Party has been submitted to Charterers in written with supporting documents signed by parties concerned within ninety(90) days after completion of discharge.

17)    **SHIPPING DOCUMENTS CLAUSE**

Owners shall give full cooperation to Charterers in issuing shipping documents, such as Bills of Lading, time sheet, manifest, and any others in a manner to be satisfactory to Charterers as per Charterers' requests, but Charterers shall keep Owners harmless in respect of any liability, loss or direct or indirect damage of whatsoever nature which the vessel/Owners may sustain as result of such comply.

18)    **FULFILLMENT/CLAIM CLAUSE**

Notwithstanding that nominee is named as Charterers in this Charter, SK Energy Co, Ltd, Seoul, SK Energy International Pte, Ltd, Singapore, or SK Europe Ltd(hereinafter refered to as 'SK Energy') hereby guarantee due fulfillment of all the terms and conditions of this Charter as if they had been named Charterers herein. Owners hereby accept that SK Energy has been or will be assigned any claim(s) that Charterers may have against the Owners under this Charter Party, and that such claim(s) may be handled and pursued by SK Energy, in accordance with the provisions of this Charter Party.

19)    **ISM CLAUSE**

The Owner warrants to be in full compliance with requirement of the International Safety Management (ISM) Code and that a Safety Management System(SMS) in accordance With ISM Code will be in operation on or after 1st of July 1998. Owner (or the Company as defined by the ISM Code) shall have valid documentation of compliance and the vessel shall have a valid Safety Management Certificate.

20)    **INTRANSIT LOSS CLAUSE**

          In the event there is a transit loss exceeding 0.3% ( vessel's ullage after loading compared with vessel's ullage before discharge), based on net volume as reported by independent surveyor, Charterers have the right to claim from freight an amount equals to that part of cargo's fob loading port price plus freight and insurance proportionately thereon. Volume of cargo to be ascertained at loading port and discharge port by independent inspectors appointed by Charterers whose findings are to be final and binding on both parties.

21)    **MISSING LAY/CAN CLAUSE**

If it becomes obvious to the owners that the vessel will not meet her cancelling date, Owners to notify Charterers of vessels eta and proposed new cancelling date.
Charterers have the option to cancel the charter within 48 working hours of notice or extend in accordance with owners new proposed cancelling date. If Charterers decide to cancel the charter, it shall be without any further liabilities to either party.
If Charterers do not cancel the charter within 48 working hours after receipt of owners notice, the c/p is maintained on basis of the new cancelling date proposed by the owners.

22)    **LIGHTERING CLAUSE**

If lightering/sts transfer operation is required same always to be in accordance with ocimf latest edition of sts transfer.

Charterers to supply all fenders/lines/hoses and any other equipment required for such an operation at charterers time and expenses and always subject to masters approval.

time to count in full 6hrs after tendering nor or when first lighter vessel is alongside, whichever earlier, until last line/fender is off and lighter vessel has sailed. Time lost due to tide and/or weather and/or sea conditions to count in full as laytime or demurrage if on demurrage. If the vessel is required to complete cargo operation at a berth in port Charterers will not have the benefit of 6 hours nor prior berthing in port

If, however, deviation is required for the lightering / sts, deviation time and cost including bunker consumption etc, consumed shall be Charterer's account. time consumed should be considered as laytime or time on demurrage.

23)    **SUPERINTENDENT CLAUSE AT SKOREAN PORT**

If requested by Charterers, Owners shall arrange superintendent who nominated by Charterers at Korean port to assist cargo operation with owner's cost but max USD2,500 for Owner's account.

24)    **NOTIFICATION CLAUSE**

In case any irregularity or incident or shortage of cargo or discrepancy of cargo quantity between shore and bills of lading etc occurs during the operation, owner/Master shall contact charterer immediately and follow charterer's instruction accordingly.

-END-

# EXHIBIT 2

  

**BNP PARIBAS**
CORPORATE & INVESTMENT BANKING

Cert No. SG01/00139

| | | |
|---|---|---|
| O/Ref | LCEX2030959 | |
| Y/Ref | | |
| O/Contact | EC2/LIMP/TEL 6210 1179 | |
| Y/Contact | | |

SK ENERGY INTERNATIONAL PTE. LTD.
4 SHENTON WAY
#11-02/04 SGX CENTRE II
SINGAPORE 068807

April 18 2008

## EXPORT DOCUMENTARY CREDIT
## NOTIFICATION

| | |
|---|---|
| Form | Irrevocable |
| By order of | PROJECTOR ASIA PTE LTD - SINGAPORE |
| Issued by | ING BELGIUM NV/SA, BRUSSEL GENEVA BRANCH - GENEVA |
| In favour of | Yourselves |
| LC no. | DOC-641816-G3 |
| Amount | USD  27,000,000.00 |
| Validity | June 15 2008 |

Available :    USD        27,000,000.00        by deferred payment 30 days after b/l date(b/l date to count as day zero)

Dear Sirs,

We enclose herewith copy of the above mentioned documentary credit which we advise to you without adding our confirmation.

Unless stipulated otherwise, this documentary credit is duly authenticated and is transmitted to you without any engagement on our part.

This notification advice forms an integral part of the subject documentary credit and must be attached thereto.  We recommend that you examine its terms and conditions to determine if you can comply with the exact requirements indicated therein. If for any reason, you may be unable to comply to the terms and conditions, it is essential that you contact the applicant (buyer) immediately for amendment(s).

When presenting documents against this documentary credit, please provide one extra copy of invoice and transport documents for our file.

Please send your representative with your company's stamp and this advice to collect the original documentary credit.

Yours truly
**BNP PARIBAS**

**This is a computer generated advice
and no signature is required.**

<div style="writing-mode: vertical">This credit is subject to the 'Uniform customs and practice for Documentary credits' adopted by the International Chamber of Commerce, Paris. Publication 600</div>

APPEARING UN. R THE HEADING 'CNF JAPAN' AS F LISHED BY PLATT'S
ASIA-PACIFIC/
ARAB GULF MARKETSCAN ON THE B/L DATE (CENTER DATE) AND THE FIVE
QUOTATIONS
IMMEDIATELY PRECEDING THE B/L DATE AND THE FIVE QUOTATIONS
IMMEDIATELY
FOLLOWING THE B/L DATE MINUS A FIXED DISCOUNT OF U.S.DOLLAR 4.50
(REPEAT US DOLLAR FOUR POINT FIVE ZERO) PER METRIC TON.
.
IN CASE OF NO QUOTATION ON B/L DATE, THEN THE FIVE QUOTATIONS
IMMEDIATELY PRECEDING AND THE FIVE QUOTATIONS IMMEDIATELY
FOLLOWING THE B/L DATE TO BE APPLIED.
.
THE FINAL PRICE SHALL BE ROUNDED OFF TO THREE (3) DECIMAL PLACES
WITH THE THIRD DECIMAL PLACE TO BE INCREASED TO THE NEXT DIGIT
WHENEVER THE FOURTH DECIMAL PLACE IS FIVE OR GREATER THAN FIVE.
.
ANY PUBLISHED CORRECTION TO ANY OF THE RELEVANT QUOTATIONS SHALL
BE TAKEN INTO ACCOUNT.
.
46A: Documents Required
DOCUMENTS ISSUED IN ONE ORIGINAL PLUS 3 COPIES. UNLESS SPECIFIED
OTHERWISE:
1)SIGNED COMMERCIAL INVOICE.
2)FULL SET 3/3 ORIGINAL CLEAN ON BOARD OCEAN BILLS OF LADING
ISSUED OR ENDORSED TO THE ORDER OF ING BELGIUM BRUSSELS.
GENEVA BRANCH MARKED 'FREIGHT PAYABLE AS PER CHARTER
PARTY'.
3)CERTIFICATE OF QUANTITY ISSUED OR COUNTERSIGNED BY INDEPENDENT
INSPECTORS AT LOADPORT.
4)CERTIFICATE OF QUALITY ISSUED OR COUNTERSIGNED BY INDEPENDENT
INSPECTORS AT LOADPORT.
5)CERTIFICATE OF ORIGIN.

49: Confirmation Instructions
WITHOUT
78: Instr to Payg/Accptg/Negotg Bank
UPON RECEIPT AT OUR COUNTERS OF THE NEGOTIATING BANK'S TESTED
TELEX/AUTHENTICATED SWIFT CONFIRMING RECEIPT AND COURIERING OF
DOCUMENTS ISSUED IN STRICT CONFORMITY WITH L/C TERMS AND
CONDITIONS, WE SHALL MAKE PAYMENT ON THE DUE DATE IN ACCORDANCE
WITH THE NEGOTIATING BANK'S INSTRUCTIONS PROVIDED SAID TEST TELEX
/AUTHENTICATED SWIFT IS RECEIVED LATEST TWO SINGAPORE/NEW YORK
BANK WORKING DAYS PRIOR TO DUE DATE.
IF RECEIVED LATER, WE SHALL EFFECT PAYMENT VALUE TWO SINGAPORE/
NEW YORK BANK WORKING DAY AFTER RECEIPT OF SAID TESTED TELEX/
AUTHENTICATED SWIFT. THE NEGOTIATING BANK IS TO CONFIRM HAVING
ENDORSED THE ORIGINAL CREDIT INSTRUMENT ON THE REVERSE FOR THE
THE NEGOTIATED AMOUNT.
------------------------------ Message Trailer ------------------------------
{CHK:EDE6FFF779A8}
{DLM:}
PKI Signature: MAC-Equivalent
*End of Message

ADVISED THROUGH
BNP PARIBAS SINGAPORE
OUR REF: LA0X2030159

```
***
***                    ***   Authentication Result: Success   ***
***
***       ------------------------ Instance Type and Transmission ------------------
***       Original received from SWIFT
***       Priority          : Normal
***       Message Output Reference : 0801 080418BNPASGSGAXXX6208279569
***       Correspondent Input Reference : 1827 080417BBRUCHGTAXXX2407003839
***       ----------------------------- Message Header ---------------------------
***       Swift Output : FIN 701 Issue of a Documentary Credit
***       Sender        : BBRUCHGTXXX
***                       ING BELGIUM NV/SA, BRUSSELS, GENEVA BRANCH (FORMER
***                       GENEVA CH
***       Receiver      : BNPASGSGXXX
***                       BNP PARIBAS - SINGAPORE BRANCH
***                       SINGAPORE SG
***
***       ----------------------------- Message Text -----------------------------
***       27: Sequence of Total
***           2/2
***       20: Documentary Credit Number
***           DOC-641816-G3
***       47B: Additional Conditions
***           1)IN THE EVENT THAT ABOVE DOCUMENTS 2 TO 5 ARE TEMPORARILY
***           UNAVAILABLE AT THE TIME OF NEGOTIATION, PAYMENT
***           WILL BE MADE AGAINST PRESENTATION OF DOCUMENT 1 AND
***           LETTER OF INDEMNITY ISSUED BY THE
***           BENEFICIARY IN ONE ORIGINAL WITH WORDING AS FOLLOWS:
***
***           QUOTE
***
***           LETTER OF INDEMNITY
***
***           TO:    PROJECTOR ASIA PTE LTD
***                  C/O ING BELGIUM, BRUSSELS, GENEVA BRANCH
***           RE:    L/C NO. DOC-641816-G3
***                  OF ING BELGIUM, BRUSSELS, GENEVA BRANCH
***
***           WE REFER TO A CARGO OF . . . . MT OF . . . . . SHIPPED ON BOARD
***           M/T . . . . . AT THE PORT OF. . . . PURSUANT TO BILLS OF LADING
***           DATED . . . . .
***
***           ALTHOUGH WE HAVE SOLD AND TRANSFERRED TITLE OF THE SAID CARGO TO
***           YOURSELVES, WE HAVE BEEN UNABLE TO PROVIDE YOU WITH 3/3 ORIGINAL
***           BILL OF LADING AND THE OTHER USUAL SHIPPING DOCUMENTS COVERING
***           THE SAID SALE.
***           IN CONSIDERARION OF YOUR PAYING THE FULL PURCHASE PRICE OF USD
***           . . . . .WE HEREBY EXPRESSLY WARRANT .THAT WE HAVE SOLD SUCH
***           . . . . TO YOU HAVING MARKETABLE TITLE TO IT AND FULL RIGHT AND
***           AUTHORITY TO TRANSFER SUCH TITLE TO YOU AND TO DELIVER SUCH
***           PRODUCT.
***
***           WE FURTHER UNDERTAKE TO MAKE ALL REASONABLE EFFORTS TO LOCATE
***           AND SURRENDER TO YOU AS SOON AS POSSIBLE 3/3 ORIGINAL
***           BILLS OF LADING AND OTHER SHIPPING DOCUMENTS AS
***           CALLED FOR UNDER . . . . . L/C NO. DOC-641816-G3
***           AND TO PROTECT. INDEMNIFY AND SAVE YOU HARMLESS FROM AND
***           AGAINST ANY AND ALL DAMAGES, COSTS AND EXPENSES (INCLUDING
***           BUT NOT LIMITED TO ANY CLAIMS AND DEMANDS WHICH MAY
***           BE MADE BY A HOLDER OR TRANSFEREE OF ANY OF THE
***           NEGOTIABLE 3/3 ORIGINAL BILLS OF LADING,
***           AND SHIPPING DOCUMENTS ABOVE MENTIONED, OR BY ANY OTHER
***           THIRD PARTY CLAIMING AN INTEREST IN OR LIEN ON THE CARGO
***           OR PROCEEDS THEREOF.
***       18/04/08-08:04:49          SGSGTRADIO3-3005-027706                 2
***
```

ADVISED THROUGH
BNP PARIBAS SINGAPORE
OUR REF: LC(Y)030695?

OUR OBLIGATION TO INDEMNIFY YOU IS, OF COURSE SUBJECT TO THE
CONDITION THAT YOU GIVE US PROMPT NOTICE OF THE ASSERTION OF ANY
CLAIM AND THE FULL OPPORTUNITY TO CONDUCT THE DEFENSE THEREOF.

THIS LETTER OF INDENITY SHALL EXPIRE UPON RECEIPT BY . . . . OF
3/3 ORIGINAL BILL OF LADING, AND OTHER SHIPPING DOCUMENTS FOUND
TO BE IN STRICT CONFORMITY WITH . . . . L/C NO.DOC-641816-63

THIS LETTER OF INDEMNITY SHALL BE GOVERNED BY AND CONSTRUED IN
ACCORDANCE WITH SINGAPORE LAW AND THE PARTIES SHALL SUBMIT
TO THE JURISDICTION OF THE HIGH COURT IN SINGAPORE.

YOURS FAITHFULLY

SK ENERGY ASIA PTE LTD.
(AUTHORISED SIGNATORY)
(NAME AND TITLE)

```
ADVISED THROUGH
BNP PARIBAS SINGAPORE
OUR REF: LCF 2030959
```

UNQUOTE

2)CHARTER PARTY BILLS OF LADING ARE ACCEPTABLE.
3)PHOTOCOPIES OF DOCUMENTS IN LIEU OF COPY DOCUMENTS ARE
ACCEPTABLE.
4) ALL OPENING BANK CHARGES ARE FOR ACCOUNT OF THE APPLICANT.
ALL OTHER CHARGES ARE FOR ACCOUNT OF THE BENEFICIARY.
5)SPELLING/TYPING ERRORS SHALL NOT BE REGARDED AS DISCREPANCIES
EXCEPT IN THE CASE OF QUANTITY(IES) AND VALUE(S).
6)DOCUMENTS PRESENTED LATER THAN 21 DAYS AFTER BILL OF LADING
DATE BUT WITHIN THE VALIDITY OF THE CREDIT ARE ACCEPTABLE.
7)PARTIAL SHIPMENT PROHIBITED/TRANSHIPMENT PROHIBITED.
8)IF PAYMENT DUE DATE FALLS ON SATURDAY OR ANY OTHER BANKING
HOLIDAY IN NEW YORK, PAYMENT SHALL BE MADE ON THE LAST PRECEDING
BANKING DAY. IF PAYMENT DUE DATE FALLS ON SUNDAY OR MONDAY BANK
HOLIDAY IN NEW YORK, PAYMENT SHALL BE MADE ON THE FIRST FOLLOWING
BANKING DAY IN NEW YORK.
9)INSURANCE SHALL BE COVERED BY BUYER.
10)TELEX COMMERCIAL INVOICE AND TELEX LETTER OF INDEMNITY ARE
ACCEPTABLE.
11)THE VALUE OF THIS LETTER OF CREDIT WILL AUTOMATICALLY
ESCALATE/DE-ESCALATE IN ACCORDANCE WITH THE PRICE CLAUSE WITHOUT
FURTHER AMENDMENT ON OUR SIDE.
------------------------------- Message Trailer -------------------------------
{CHK:57F5E7283ADE}
{DLM:}
PKI Signature: MAC-Equivalent
*End of Message

This L/C is Valid only when used
in conjunction with our advice
dated 18/4/08 ......................

For BNP PARIBAS SINGAPORE

  

Cert No. SG01/00139

| | | |
|---|---|---|
| O/Ref | LCEX2030959 | |
| Y/Ref | DOC-641816-G3 | |
| | | |
| O/Contact | EC2/WONK/TEL 62101115 | |
| Y/Contact | | |

**SK ENERGY INTERNATIONAL PTE. LTD.**
**4 SHENTON WAY**
**#11-02/04 SGX CENTRE II**
**SINGAPORE 068807**

April 21 2008

## EXPORT DOCUMENTARY CREDIT
## AMENDMENT n.1

| | |
|---|---|
| Form | Irrevocable |
| By order of | PROJECTOR ASIA PTE LTD - SINGAPORE |
| Issued by | ING BELGIUM NV/SA, BRUSSEL GENEVA BRANCH - GENEVA |
| In favour of | Yourselves |
| Amount | USD   27,000,000.00 |
| Validity | June 15 2008 |
| Lc ref. | DOC-641816-G3 |

Available :    USD        27,000,000.00        by negotiation at usance 30 days from b/l date(b/l date count as
day one)

Dear Sirs,

Unless stipulated otherwise, this documentary credit amendment is duly authenticated and is transmitted to you without any engagement on our part.

This notification advice forms an integral part of the subject credit and must be attached thereto.  We recommend that you examine this documentary credit to determine if you can comply with the exact requirements indicated therein. If for any reason, you may be unable to comply to the conditions, it is essential that you contact the applicant (buyer) immediately to have the credit amended.

When presenting documents against this credit, please provide one extra copy of invoice and transport documents for our file.

Please send your representative with your company's stamp and this advice to collect the original amendment.

Yours truly
**BNP PARIBAS**

**This is a computer generated advice**
**and no signature is required.**

This credit is subject to the 'Uniform customs and practice for Documentary credits' adopted by the International Chamber of Commerce, Paris. Publication 600

```
***
***            ***   Authentication Result: Success   ***
***
***        ------------------- Instance Type and Transmission -------------
***        Original received from SWIFT
***        Priority            : Normal
***        Message Output Reference : 0801 080421BNPASGSGAXXX6209280613
***        Correspondent Input Reference : 1636 080418BBRUCHGTAXXX2408004410
***        ------------------------- Message Header -----------------------
***        Swift Output : FIN 707 Amendment to a Doc Credit
***        Sender       : BBRUCHGTXXX
***                       ING BELGIUM NV/SA, BRUSSELS. GENEVA BRANCH (FORMER
***                       GENEVA CH
***        Receiver     : BNPASGSGXXX
***                       BNP PARIBAS - SINGAPORE BRANCH
***                       SINGAPORE SG
***
***        ------------------------- Message Text -------------------------
***        20: Sender's Reference
***            DOC-641816-G3
***        21: Receiver's Reference
***            UNKNOWN
***        31C: Date of Issue
***             080417
***        30: Date of Amendment
***            080418
***        26E: Number of Amendment
***             01
***        59: Benefic'y (before amndmt)-Nm&Add
***            SK ENERGY ASIA PTE LTD
***        79: Narrative
***            AMEND THE BENEFICIARY'S NAME ON THE L/C AND L.O.I
***            TO 'SK ENERGY INTERNATIONAL PTE LTD'
***            .
***            UNDER FIELD 41D: DELETE 'BY DEF PAYMENT', INSERT
***            'BY NEGOTIATION'
***            .
***            UNDER FIELD 42P: DELETE 'AT 30 DAYS AFTER B/L (B/L
***            TO COUNT AS DAY O)', INSERT 'AT 30 DAYS FROM B/L
***            DATE (B/L DATE TO COUNT AS DAY ONE)'
***            .
***            ALL OTHER TERMS AND CONDITIONS REMAIN.
***            .
***            BEST REGARDS.
***            .
***            L/C DEPT - G3 - DA
***        ------------------------- Message Trailer ----------------------
***        {CHK:2C58BE6D565A}
***        {DLM:}
***        PKI Signature: MAC-Equivalent
*End of Message
```

ADVISED THROUGH
BNP PARIBAS SINGAPORE
OUR REF: 66x203095

This L/C amendment is Valid only when
used in conjunction with our advice
dated .....21.9.0.........reference

For BNP PARIBAS SINGAPORE

# EXHIBIT 3

**From:** kim_nautica [mailto:nautica@nauticaship.co.kr]
**Sent:** Monday, April 28, 2008 8:18 PM
**To:** seaservice
**Subject:** DYNAMIC EXPRESS / SKE CP 16/APR/2008 - CHRS' LOI

TO  : SEASERVICE / SUZUKI SAN
FROM : NAUTICA / KIM

RE : DYNAMIC EXPRESS / SKE CP 16/APR/2008 - CHRS' LOI
---------------------------------------------------------

DEAR SUZUKI SAN,

PLS FIND CHRS' LOI HEREBELOW AND KINDLY CONFIRM IT IS IN ORDER.

=QTE=

                                    28TH APR., 08
TO   MITSUI O.S.K LINES, LTD
   The Owners of the M/T DYNAMIC EXPRESS
   1-1, TORANOMON 2-CHOME, MINATO-KU, TOKYO

   Dear Sirs
   Ship     : DYNAMIC EXPRESS
   Voyage    : DALIAN, CHINA
              ONE OR SAFE PORT(S),KOREA
   Cargo     : 28,831.588 MTS OF NAPHTHA
   Bill of lading:  1 , APR.28,2008, DALIAN CHINA

The above cargo was shipped on the above ship by WEST PACIFIC PETROCHEMICAL
CO.,LTD.DALIAN and consigned to TO THE ORDER OF SK ENERGY INTERNATIONAL
PTE LTD for delivery at the port of ONE OR SAFE PORT(S),KOREA but the bill
of lading has not arrived and we, SK ENERGY EUROPE LTD., hereby request you
to deliver the said cargo to

LG CHEM., LTD AT DEASAN, KOREA SEETEC #1BERTH
NOT LESS THAN 22,500 TONNES

AND

KOREA PETROCHEMICAL IND.CO.,LTD AT ONSAN, KOREA
BALANCE CARGO APPROX 6,331.588 TONNES

without production of the original bill of lading.

   In consideration of your complying with our above request, we hereby
   agree as follows:-

   1. To indemnify you, your servants and agents and to hold all of you
   harmless in respect of any liability, loss, damage or expense of whatsoever
   nature which you may sustain by reason of delivering the cargo in accordance
   with our request.

   2. In the event of any proceedings being commenced against you or any of
   your servants or agents in connection with the delivery of the cargo as
   aforesaid,
   to provide you or them on demand with sufficient funds to defend the
   same.

   3. If, in connection with the delivery of the cargo as aforesaid, the

ship, or any other ship or property in the same or associated ownership,
management or control, should be arrested or detained or should the arrest
or detention thereof be threatened, or should there be any interference
in the use or trading of the vessel (whether by virtue of a caveat being
entered on the ship's registry or otherwise howsoever), to provide on demand
such bail or other security as may be required to prevent such arrest or
detention or to secure the release of such ship or property or to remove
such interference and to indemnify you in respect of any liability, loss,
damage or expense caused by such arrest or detention or threatened arrest
or detention or such interference, whether or not such arrest or detention
or threatened arrest or detention or such interference may be justified.

4. If the place at which we have asked you to make delivery is a bulk
liquid or gas terminal or facility, or another ship, lighter or barge,
then delivery to such terminal, facility, ship, lighter or barge shall be
deemed to be delivery to the party to whom we have requested you to make
such delivery.

5. As soon as all original bills of lading for the above cargo shall
have come into our possession, to deliver the same to you, or otherwise to
cause all original bills of lading to be delivered to you, whereupon our
liability hereunder shall cease.

6. The liability of each and every person under this indemnity shall be
joint and several and shall not be conditional upon your proceeding first
against any person, whether or not such person is party to or liable under
this indemnity.

7. This indemnity shall be governed by and construed in accordance with
English law and each and every person liable under this indemnity shall at
your request submit to the jurisdiction of the High Court of Justice of England.

YOURS FAITHFULLY
Y.H.JANG
GENERAL MANAGER
FOR AND ON BEHALF OF
SK ENERGY EUROPE LTD.

=UNQTE=

THANK YOU.

B.RGDS / KIM J E

--------------------------
Nautica Shipping Co., Ltd. Tel: 82-2-6377-1156  Fax: 82-2-6377-1160

Add : #2303 Renaissance Tower, 456 Gongduk-Dong, Mapo-Gu, Seoul
      Korea, 121-020

E-mail: nautica@nauticaship.co.kr

JG Lee : Mob: 82-11-9881-8071 AOH:82-2-2643-8071 Yahoo: jglee_nautica
Jin Kim: Mob: 82-18-553-5225  AOH:82-31-520-6527 Yahoo:jin_nautica
KIM J E: Mob: 82-10-6310-1992 AOH:NIL        Yahoo: kimje_nautica
SI Shin: Mob: 82-16-440-9456 AOH:82-2-337-3602 Yahoo: inny81_nautica

# EXHIBIT 4

Projector Asia Pte Ltd
2 Battery Road
#22-01 Maybank Tower
Singapore 049907

Ph: + (65) 68260118
Fax: + (65) 68260122
Telex: RS20128



Company Registration Number: 200412257M

TO: SK ENERGY EUROPE LTD.                                28TH APR., 08

THE OWNERS OF THE M/T DYNAMIC EXPRESS

DEAR SIRS
SHIP              :    DYNAMIC EXPRESS
VOYAGE            :    DALIAN, CHINA
                       ONE OR SAFE PORT(S),KOREA
CARGO             :    28,831.588 MTS OF NAPHTHA
BILL OF LADING:        1 , APR.28,2008, DALIAN CHINA

THE ABOVE CARGO WAS SHIPPED ON THE ABOVE SHIP BY WEST PACIFIC PETROCHEMICAL
CO.,LTD.DALIAN AND CONSIGNED TO TO THE ORDER OF SK ENERGY INTERNATIONAL
PTE LTD FOR DELIVERY AT THE PORT OF ONE OR SAFE PORT(S),KOREA BUT THE BILL
OF LADING HAS NOT ARRIVED AND WE, PROJECTOR SA, HEREBY REQUEST YOU
TO DELIVER THE SAID CARGO TO

LG CHEM., LTD AT DEASAN, KOREA SEETEC #1BERTH
NOT LESS THAN 22,500 TONNES

AND

KOREA PETROCHEMICAL IND.CO.,LTD AT ONSAN, KOREA
BALANCE CARGO APPROX 6,331.588 TONNES

WITHOUT PRODUCTION OF THE ORIGINAL BILL OF LADING.

IN CONSIDERATION OF YOUR COMPLYING WITH OUR ABOVE REQUEST, WE HEREBY
AGREE AS FOLLOWS:-

1.  TO INDEMNIFY YOU, YOUR SERVANTS AND AGENTS AND TO HOLD ALL OF YOU
HARMLESS IN RESPECT OF ANY LIABILITY, LOSS, DAMAGE OR EXPENSE OF WHATSOEVER
NATURE WHICH YOU MAY SUSTAIN BY REASON OF DELIVERING THE CARGO IN ACCORDANCE
WITH OUR REQUEST.

2.  IN THE EVENT OF ANY PROCEEDINGS BEING COMMENCED AGAINST YOU OR ANY OF
YOUR SERVANTS OR AGENTS IN CONNECTION WITH THE DELIVERY OF THE CARGO AS
AFORESAID,
 TO PROVIDE YOU OR THEM ON DEMAND WITH SUFFICIENT FUNDS TO DEFEND THE
SAME.

3.  IF, IN CONNECTION WITH THE DELIVERY OF THE CARGO AS AFORESAID, THE
SHIP, OR ANY OTHER SHIP OR PROPERTY IN THE SAME OR ASSOCIATED OWNERSHIP,
MANAGEMENT OR CONTROL, SHOULD BE ARRESTED OR DETAINED OR SHOULD THE ARREST
OR DETENTION THEREOF BE THREATENED, OR SHOULD THERE BE ANY INTERFERENCE
IN THE USE OR TRADING OF THE VESSEL (WHETHER BY VIRTUE OF A CAVEAT BEING

ENTERED ON THE SHIP'S REGISTRY OR OTHERWISE HOWSOEVER), TO PROVIDE ON DEMAND
SUCH BAIL OR OTHER SECURITY AS MAY BE REQUIRED TO PREVENT SUCH ARREST OR
DETENTION OR TO SECURE THE RELEASE OF SUCH SHIP OR PROPERTY OR TO REMOVE
SUCH INTERFERENCE AND TO INDEMNIFY YOU IN RESPECT OF ANY LIABILITY, LOSS,
DAMAGE OR EXPENSE CAUSED BY SUCH ARREST OR DETENTION OR THREATENED ARREST
OR DETENTION OR SUCH INTERFERENCE, WHETHER OR NOT SUCH ARREST OR DETENTION
OR THREATENED ARREST OR DETENTION OR SUCH INTERFERENCE MAY BE JUSTIFIED.

4.   IF THE PLACE AT WHICH WE HAVE ASKED YOU TO MAKE DELIVERY IS A BULK
LIQUID OR GAS TERMINAL OR FACILITY, OR ANOTHER SHIP, LIGHTER OR BARGE,
THEN DELIVERY TO SUCH TERMINAL, FACILITY, SHIP, LIGHTER OR BARGE SHALL BE
DEEMED TO BE DELIVERY TO THE PARTY TO WHOM WE HAVE REQUESTED YOU TO MAKE
SUCH DELIVERY.

5.   AS SOON AS ALL ORIGINAL BILLS OF LADING FOR THE ABOVE CARGO SHALL
HAVE COME INTO OUR POSSESSION, TO DELIVER THE SAME TO YOU, OR OTHERWISE TO
CAUSE ALL ORIGINAL BILLS OF LADING TO BE DELIVERED TO YOU, WHEREUPON OUR
LIABILITY HEREUNDER SHALL CEASE.

6.   THE LIABILITY OF EACH AND EVERY PERSON UNDER THIS INDEMNITY SHALL BE
JOINT AND SEVERAL AND SHALL NOT BE CONDITIONAL UPON YOUR PROCEEDING FIRST
AGAINST ANY PERSON, WHETHER OR NOT SUCH PERSON IS PARTY TO OR LIABLE UNDER
THIS INDEMNITY.

7.   THIS INDEMNITY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH
ENGLISH LAW AND EACH AND EVERY PERSON LIABLE UNDER THIS INDEMNITY SHALL AT
YOUR REQUEST SUBMIT TO THE JURISDICTION OF THE HIGH COURT OF JUSTICE OF ENGLAND.

FOR AND ON BEHALF OF
PROJECTOR SA

TAN HWEE LENG
ASST. OPERATIONS MANAGER

PROJECTOR ASIA PTE LTD
2 BATTERY ROAD
#22-01 MAYBANK TOWER
SINGAPORE
049907

# EXHIBIT 5

Case No.           : ADM81/2008/K
Document No.       : WA30/2008/K
Date Of Filing     : 10 06 2008
Time Of Filing     : 09:52:51
Doc Control No.    : 189582 A



Mr. Foo Chee Hock
Acting Registrar
Supreme Court
Singapore

IN THE HIGH COURT OF THE REPUBLIC OF
SINGAPORE

ADM81/2008/K

Admiralty action in rem against the ship or vessel
"DYNAMIC EXPRESS" (LR No. 9032680)

Between

1.    ING BELGIQUE SA
      (Switzerland) RC No. 77.186

2.    ING BELGIUM, BRUSSELS, GENEVA
      BRANCH
      (Switzerland) RC No. CH-660-1299001-

...Plaintiff(s)

And

THE OWNERS AND/OR DEMISE
CHARTERERS OF THE SHIP OR VESSEL
"DYNAMIC EXPRESS"
(Panama) LR No. 9032680

...Defendant(s)

---

**WARRANT OF ARREST IN ADMIRALTY
ACTION**

---

SEOW HWANG SENG JOHN
CHUA KAI EN
DREW & NAPIER LLC
20 RAFFLES PLACE
#17-00 OCEAN TOWERS
SINGAPORE 048620
TEL:65350733
FAX:06565327149
Ref: JSW/KAI 311026

Filed this 10th day of June 2008

## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

Admiralty in Rem No. 81 of 2008/K

Admiralty action in rem against the ship or vessel
**"DYNAMIC EXPRESS"** (LR No. 9032680)

**Between**

1. ING BELGIQUE SA (Company Registration
   No. 77.186)

2. ING BELGIUM, BRUSSELS, GENEVA
   BRANCH (Company Registration No. CH-660-
   1299001-7)

... Plaintiffs

**And**

THE    OWNERS    AND/OR    DEMISE
CHARTERERS  OF  THE  SHIP  OR  VESSEL
**"DYNAMIC EXPRESS"** (LR No. 9032680)

... Defendants

### WARRANT OF ARREST

To the Sheriff,

You are directed to arrest the ship or vessel **"DYNAMIC EXPRESS"** of the Port
of PANAMA and to keep the same under safe arrest until you shall receive further
orders.

Dated the 10th day of June 2008.

Entered No. 30   of 2008. K

Chew Chin Yee

Clerk VICTOR                         Assistant        **REGISTRAR**

- 2 -

## INDORSEMENT OF CLAIM

The first and/or second Plaintiffs as owners and/or as persons having rights to immediate possession of 28,831.588 metric tons of Naphtha (the "Cargo") shipped or carried onboard the vessel "DYNAMIC EXPRESS" (the "Vessel") at Dalian, China for carriage to one or more safe port(s) in Korea on or about 28 April 2008 under a Bill of Lading B/L No. 1 dated 28 April 2007 and/or as lawful holders of the said bill of lading, claim against the Defendants damages (together with interest and costs) for breach of bailment and/or breach of sub-bailment and/or breach of duty and/or negligence in and about the loading, stowage, handling, custody, care and/or carriage and/or discharge and/or delivery thereof resulting in the loss of the cargo.

- 3 -

I CERTIFY that this Warrant of Arrest was served by my bailiff

personally on                  , the              day of              , 2008

at

by affixing the Warrant for a short time on the main mast of the ship, and on removing

the Warrant, leaving a copy affixed in its place.

Dated and filed this             day of              , 2008.

**SHERIFF**

## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

Admiralty in Rem No. &1    of 2008 /K

Admiralty action in rem against the ship or vessel
**"DYNAMIC EXPRESS"** (LR No 9032680)

**Between**

1. ING    BELGIQUE    SA    (Company
   Registration No. 77.186)

2. ING BELGIUM, BRUSSELS, GENEVA
   BRANCH (Company Registration No. CH-
   660-1299001-7)

... Plaintiffs

**And**

THE    OWNERS    AND/OR    DEMISE
CHARTERERS OF THE SHIP OR VESSEL
**"DYNAMIC EXPRESS"** (LR No 9032680)

... Defendants

## AFFIDAVIT

I, **LOW PECK CHENG CATHERINE** (NRIC No.
S1734127H), care of ING Bank N.V., Singapore Branch, 9 Raffles Place, #19-
02 Republic Plaza Singapore 048619, Singapore, do hereby solemnly and
sincerely make oath and say as follows:

2

1.    I am the Managing Director and Regional Manager, Asia, Commodities Group and Trade Finance Services of ING Bank N.V., Singapore Branch and I am authorised by the Plaintiffs to make this affidavit on their behalf.

2.    I make this affidavit to support the Plaintiffs' arrest of the vessel "DYNAMIC EXPRESS" (the "Vessel") in these proceedings as security for their claims. The Second Plaintiffs are a branch of the First Plaintiffs.

3.    The matters stated herein are true to the best of my knowledge, information and belief and are based on matters and documents advised to me by the Plaintiffs for the purposes of making this affidavit.    Attached hereto as exhibit "**CL-1**" is a bundle of documents that I will refer to in this affidavit.

4.    The Plaintiffs' claim against the Defendants is for the loss of a cargo of 28,831.588 metric tons of Naphtha that was shipped by the Defendants' ship or vessel the "DYNAMIC EXPRESS" (the "Cargo").    Attached hereto at pages 9-14 of exhibit "**CL-1**" are true copies of all three originals of the Bill of Lading B/L No. 1 dated 28 April 2008 made out to the order of the consignee, SK Energy International Pte Ltd ("SK Energy"), who in turn indorsed

the said Bill of Lading to the Plaintiffs, evidencing the shipment of the cargo on board "DYNAMIC EXPRESS" from Dalian, China to one or more safe port (s) Korea.

5.   The Plaintiffs were the issuing bank of Letter of Credit No. DOC-641816-G3 dated 17 April 2008 ("L/C") and came into the possession of all three originals of the Bill of Lading pursuant to the terms of the L/C, a copy of which is attached hereto at pages 15-19 of exhibit "**CL-1**".  SK Energy, the consignee of the Cargo, negotiated the L/C in their favour against their Letter of Indemnity (pursuant to clause 47B of the L/C).  Once SK Energy obtained full payment for the Cargo from the Plaintiffs with a value date of 27 May 2008, they endorsed the 3 originals of the Bill of Lading to the Plaintiffs' order and presented the full set of Bill of Lading to their bankers, BNP Paribas Singapore (the advising bank of the L/C) who then couriered the same to the Plaintiffs.  However, the Plaintiffs have not been reimbursed by the applicant of the Letter of Credit.

4

6.    As the Defendants are not to deliver the cargo except with the surrender of at least one of the three original copies of the Bill of Lading and as all three originals of the Bill of Lading remain in the possession of the Plaintiffs, the cargo ought still to be in the possession of the Defendants.

7.    However, queries by the firm of Choi and Kim, a Korean law firm, at the instructions of Drew & Napier LLC, the Plaintiffs' lawyers, have revealed that a total of 28,831.588 metric tons of the cargo has already been discharged and/or delivered by the Defendants in Korea at the ports of Daesan and Ulsan to various receivers on 29 April 2008 and 2 May 2008 respectively. In the circumstances, it would be apparent that the above cargo has been delivered by the Defendants without any of the originals of the Bill of Lading being surrendered to the Defendants and they are therefore liable to the Plaintiffs for the loss of the cargo.

8.    The Plaintiffs' claim against the Defendants falls within Section 3 (1) (g) and alternatively (h) of the High Court (Admiralty Jurisdiction) Act (Cap 123), that is a claim for loss of or damage to goods carried in a ship or a claim arising out of an agreement relating to the carriage of goods in a ship.

9.  The action is brought by the Plaintiffs pursuant to Section 4 (4) of the High Court (Admiralty Jurisdiction) Act (Cap 123), and the property to be arrested is the ship or vessel the "DYNAMIC EXPRESS" of the port of Panama, and is the ship with which the Plaintiffs' claim herein arose.

10. Based on the advice of the Plaintiffs' solicitors, I verily believe that the person who would apart from Section 5 of the High Court (Admiralty Jurisdiction) Act, be liable on the claim in an action in personam is Proton Transport S.A. of Panama, who were when the cause of action arose, the owners of the ship or vessel "DYNAMIC EXPRESS" and were also at the time of the issuance of the Writ i.e. 4th June 2008, the beneficial owners of all the shares in the vessel "DYNAMIC EXPRESS" in respect of which the warrant is required.

11. The grounds of my belief are that a Lloyd's MIU Search effected on 4th June 2008 (attached hereto at page 20 of exhibit "CL-1") and a Marinet Search effected on 4th June 2008 (attached hereto at page 21-22 of exhibit "CL-1") list the owners of the "DYNAMIC EXPRESS" as Proton Transport S.A. from 1 January 1993 to present and I verily believe that there has been no change of ownership as at the date of issuance of the Writ i.e. 4th June 2008.

I would however make clear that the Plaintiffs also claim against the demise charterers of the vessel in the event that the vessel is demise chartered although the Plaintiffs presently do not have any information if the vessel is demise chartered.

12.  I have been advised by the Plaintiffs' solicitors to highlight to the Court that the attached Bill of Lading contains the following Clause 2 (see pages 10, 12 & 14 of "**CL-1**"):

> "**2.    JURISDICTION.  ALL disputes arising under and in connection with this Bill of Lading shall be settled in the flag-state of the ship, or otherwise in the place mutually agreed between the Carrier and the Merchant.**"

13.  In relation to the above clause, I have been advised by the Plaintiffs' solicitors that this Honourable Court has jurisdiction to determine the claims on the merits even where there is a non-exclusive jurisdiction clause, but the Court has a discretion to stay the action.

14.    The Plaintiffs have been unable to obtain payment and/or security from the Defendants in respect of their claim herein.  The aid and process of this Honourable Court is necessary to enforce the payment of the Plaintiffs' claim by the arrest of the vessel "DYNAMIC EXPRESS".


Sworn by the                                    )

abovenamed Low Peck Cheng Catherine            )

on this      6th      day of June 2008          )

Before Me,


A Commissioner for Oaths

**8**

THIS IS THE EXHIBIT MARKED " C L - 1           "

R E F E R R E D   T O   I N   T H E   A F F I D A V I T

OF ............... Low Peck Cheng Catherine .....................

SWORN/AFFIRMED THIS ..................................... DAY

OF ............... June ............... 20 0 8 .

**BEFORE ME**

A COMMISSIONER FOR OATHS

William Oh
Kim Chong
( 1 Apr 2006 – 31 Mai 2008)
SINGAPORE

**9**

| Shipper | | BILL OF LADING | B/L No. |
|---|---|---|---|

Shipper

WEST PACIFIC PETROCHEMICAL CO.,LTD.DALIAN

**BILL OF LADING**

B/L No.

Nationality of Ocean Vessel

Consignee

TO THE ORDER OF SK ENERGY INTERNATIONAL
PTE LTD

Notify Address

Shipped on board the vessel named herein in apparent good order and condition (unless otherwise indicated) the goods or packages specified herein and to be discharged at the above mentioned port of discharge or as near thereto as the vessel may safely get and be always afloat.

The weight, measure, marks, numbers, quality, contents and value, being particulars furnished by the Shipper, are not checked by the Carrier on loading. The Shipper, Consignee and the Holder of this Bill of Lading hereby expressly accept and agree to all printed, written or stamped provisions,exceptions and conditions of this Bill of Lading, including those on the back hereof, One of the Bills of Lading duly endorsed must be surrendered in exchange for the goods or delivery order.

In witness whereof, the Carrier or his Agents has signed Bills of Lading all of this tenor and date, one of which being accomplished, the others to stand void.

Shippers are requested to note particularly the exceptions and conditions of this Bill of Lading with reference to the validity of the insurance upon their goods.

| Pre-carriage by | Place of Receipt by Pre-carrier |
|---|---|

| Ocean Vessel | Port of Loading |
|---|---|
| DYNAMIC EXPRESS | DALIAN, CHINA |

**Original**

| Port of Discharge | Final destination(if goods to be transhipped at port of discharge) | Freight payable at | Number of original B(s)L. |
|---|---|---|---|
| ONE OR SAFE PORT(S) KOREA | | | THREE/THREE |

| Marks & Nos./Container Nos. | Number and kind of packages,description of goods | Gross weight kgs | Measurement m³ |
|---|---|---|---|
| N/M | IN BULK NAPHTHA | | |

TOTAL WEIGHT: 28,831.588MTS
28,376.508LTS
41,192.142KL AT 15 DEG C
259,282.07US BBLS AT 60 DEG F

**CLEAN ON BOARD**

| TOTAL PACKAGES (IN WORDS) | |
|---|---|

| Freight and charges | Place of B(s)/L Issue | Dated |
|---|---|---|
| | DALIAN CHINA  APR.28,2008 | |

FREIGHT PAYABLE AS PER CHARTER PARTY

Signed for the Carrier

AS MASTER:

MT "DYNAMIC EXPRESS"
PORT OF REG.: PANAMA
IMO NO.    : 9032660
CALL SIGN  : 3FJP3
(GRT)      : 25644
NRT        : 11349
BHP        : 12750

N)Applicable only when document used as a Through Bill of Lading

The following are the conditions and exceptions hereinbefore referred to:

1. **DEFINITION.** "Merchant" includes the Shipper, the Receiver, the Consignee, the Consignor, the Holder of the Bill of Lading and the Owner of the Goods.

2. **JURISDICTION.** ALL disputes arising under and in connection with this Bill of Lading shall be settled in the flag-state of the ship, or otherwise in the place mutually agreed between the Carrier and the Merchant.

3. **PARAMOUNT CLAUSE.** This Bill of lading shall be subject to the Hague Rules contained in the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading dated at Brussels the 25th August 1924, or the corresponding legislation of the flag-state of the ship. If the stipulations of this Bill of Lading are wholly or partly contrary thereto, this Bill of Lading shall be read as if such stipulation or part thereof, as the case may be, were deleted.

4. **PERIOD OF RESPONSIBILITY.** The responsibility of the Carrier shall commence from the time when the goods are loaded on board the vessel and shall cease when they are discharged from the vessel.
   The Carrier shall not be liable for loss of or damage to the goods before loading and after discharging from the vessel, howsoever such loss or damage arises.

5. **PACKING AND MARKS.** The Merchant shall have the goods properly packed and accurately and clearly marked before shipment. The port of destination of the goods should be marked in letters not less than 5 cm high in such a way as will remain legible until their delivery. All fines and expenses arising from insufficiency or inadequacy of packing or marks shall be borne by the Merchant.

6. **FREIGHT AND OTHER CHARGES.** (1) Advance freight together with other charges is due on shipment if not prepaid, though stipulated, the freight and other charges shall be paid by the Merchant plus 5% interest per annum running from the date of notification for their payment.
   If the cargo shipped are perishables, low cost goods, live animals, deck cargo or goods for which there is no Carrier's agent at the port of destination, the freight for such cargo and all related charges shall be paid at the time of shipment.
   Freight payable at destination together with other charges is due on vessel's arrival. Advance freight and/or freight payable at destination shall be paid to the Carrier in full, and non-returnable and non-deductable irrespective of whatever loss or damage may happen to vessel and cargo or either of them.
   (2) All dues, taxes and charges or any other expenses in connection with the goods shall be paid by the Merchant.

7. **INCORRECT STATEMENTS.** The Carrier is entitled at port of shipment and/or port of destination, to verify the cargo weight, measurement and contents of the goods as declared by the Merchant. If the weight, measurement and/or contents of such goods as stated in the Bill of Lading turned out to be inconsistent with that of the goods actually loaded, and the freight paid falls short of the amount which would have been due if such declaration had been correctly given, the Carrier is entitled to collect from the Merchant as liquidated damages to the Carrier double the amount of difference between the freight for the goods actually shipped and that mis-stated.
   The Merchant shall be liable for loss of and damage to the vessel and/or goods arising or resulting from inaccuracies in stating the description, quality, weight, measurement or contents of the goods and shall indemnify the Carrier for the costs and expenses in connection with weighing, measuring and checking such goods.

8. **LOADING, DISCHARGING AND DELIVERY.** The goods shall be supplied and taken delivery of by the Owner of the goods as fast as the vessel can take and discharge them, without interruption, by day and if required by Carrier also by night, sundays and holidays included, notwithstanding any custom of the port to the contrary and the Owner of the goods shall be liable for all losses or damages including demurrage incurred in default thereof.
   Discharge may commence without previous notice. If the goods are not taken delivery of by the Receiver from alongside the vessel without delay, or if the Receiver refuses to take delivery of the goods, or in case there are unclaimed goods the Carrier shall be at liberty, to land such goods on shore or any other proper place at the sole risk and expense of the Merchant and the Carrier's responsibility of delivery of cargo shall be deemed to have been fulfilled.
   Weighing on board is only allowed by special permission of the Carrier, including detention and extra costs of discharging, shall be for account of the Receivers or Consignees, notwithstanding any custom of the port to the contrary.
   If the goods are unclaimed during a reasonable time, or whenever the goods becomes deteriorated, decayed or worthless, the Carrier may, at his discretion and subject to his lien, and without any responsibility attaching to him, sell, abandon or otherwise dispose of such goods solely at the risk and expense of the Merchant.

9. **LIGHTERAGE.** ANY lighterage in or off ports of loading or ports of discharge shall be for the account of the Merchant.

10. **LIEN.** The Carrier shall have a lien on the goods and any document relating thereto for freight, dead freight, demurrage and any other amount payable by the Merchant and for General Average contributions for whomsoever due and for the cost of recovering the same, and for this purpose shall have the right to sell or otherwise dispose of the goods. It on sale of the goods, the proceeds fail to cover the amount due and the cost and expenses incurred, the Carrier shall be entitled to recover the deficit from the Merchant.

11. **NOTICE OF LOSS OR DAMAGE, TIME BAR.** Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the Carrier of the goods as described in the Bill of Lading.
   If the loss or damage is not apparent, the notice must be given within 3 days of delivery.
   The notice in writing need not be given if the state of the goods has at the time of their receipt been the subject of joint survey or inspection.
   In any event the Carrier and the vessel shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.
   In the case of any actual or apprehended loss or damage, the Carrier and the Receiver shall give all reasonable facilities to each other for inspecting and tallying the goods.

12. **LIMITATION OF LIABILITY.** All claims for which the Carrier may be liable shall be calculated on the basis of the Merchant's net invoice cost, plus freight and insurance premium, if paid. In no event shall the Carrier be liable for any loss of possible profit or any consequential loss.
   The Carrier for any loss of or damage to the goods shall be limited to an amount not exceeding £ 100 per package or freight unit unless the value of the goods higher than the amount is declared in writing by the Shipper before receipt of the goods by the Carrier and inserted in this Bill of Lading and extra freight paid as required. If the actual value of the goods per package or per freight unit exceeds such value, the declared value shall nevertheless be deemed to be the declared value and the Carrier's liability, if any, shall not be the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

13. **FORWARDING, SUBSTITUTE OF VESSEL, THROUGH CARGO AND TRANSHIPMENT.** If necessary, the Carrier shall be at liberty to carry the goods to their port of destination by other vessel or vessels either belonging to the Carrier or other persons or by rail or other means of transport proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination, and to tranship, lighter, land and store the goods on shore or afloat and reship and forward same at the Carrier's expenses but at Merchant's risk. The responsibility of the Carrier shall be limited to the part of the transport performed by him on the vessel under his management.

14. **DANGEROUS GOODS, CONTRABAND.** (1) The Merchant undertakes not to tender for transportation any goods which are of a dangerous, inflammable, radio-active, and/or any harmful nature without previously giving written notice of their nature to the Carrier and marking the goods and the container or other covering on the outside as required by any laws or regulations which may be applicable during the carriage.
   (2) Whenever the goods are discovered to have been shipped without complying with the subclause (1) above or the goods are found to be contraband or prohibited by any

laws or regulations of the port of loading, discharge or call or any place or waters during the carriage, the Carrier shall be entitled to have such goods rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation and the Merchant shall be liable for and indemnify the Carrier against any kind of loss, damage or liability including loss of freight and any expenses directly or indirectly arising out of or resulting from such shipment.
   (3) If any goods shipped complying with the sub-clause (1) above become a danger to the ship or cargo, they may, in like manner be rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation except in General Average, if any.

15. **DECK CARGO, LIVE ANIMALS AND PLANTS.** Cargo on deck, plants and live animals are received, handled, carried, kept and discharged at Merchant's risk and the Carrier shall not be liable for loss thereof or damage thereto.

16. **CARGO IN CONTAINERS.** (1) Goods may be stowed by the Carrier or his agents or servants in containers and containers whether stowed as aforesaid or received fully stowed may be carried on or under deck without notice. The Carrier's liability for such cartage shall likewise be governed by the terms and conditions of this Bill of Lading irrespective of Clause 15 hereof notwithstanding the fact that the goods are being carried on deck and the goods shall contribute to General Average and shall receive compensation in General Average. (2) If a container has not been filled, packed, stuffed or loaded by the Carrier, the Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any injury, loss, damage, liability or expense incurred if such loss, injury, loss, damage, liability or expense has been caused by:
   1) the manner in which the container has been filled, packed, stuffed or loaded; or
   2) the unsuitability of the contents for carriage in containers; or
   3) the unsuitability or defective condition of the container which would have been apparent upon reasonable inspection by the Merchant at or prior to the time the container was filled, packed, stuffed or loaded.
   If a container which has not been filled, packed, stuffed or loaded by the Carrier is delivered by the Carrier with the seal intact, such delivery shall be deemed as full and complete performance of the Carrier's obligation hereunder and the Carrier shall not be liable for any loss of or damage to the contents of the container. The Shipper shall inspect containers before stuffing them and the use of the containers shall be prima facie evidence of their being sound and suitable for use.

17. **REFRIGERATED GOODS.** Before loading carrying in any insulated space, the Carrier shall, in addition to the Class Certificate, obtain the certificate of the Classification Society's Surveyor or other competent person, stating that such insulated space and refrigerating machinery are in the opinion of the surveyor or other competent person fit and safe for the carriage and preservation of refrigerated goods. The aforesaid certificate shall be conclusive evidence against the Merchant.
   Receivers have to take delivery of refrigerated cargo as soon as the vessel is ready to deliver, otherwise the Carrier shall land the goods at the wharf at the Merchant's risk and expense.

18. **TIMBER.** Any statement in this Bill of Lading to the effect that timber has been shipped "in apparent good order and condition "does not involve any admission by the Carrier as to the absence of stains, shakes, splits, holes or broken pieces, for which the Carrier accepts no responsibility.

19. **IRON AND STEEL.** Every piece of Iron and Steel is to be distinctly and permanently marked with oil paint and every bundle securely fastened, distinctly and permanently marked with oil paint and metal tagged by the Merchant, so that each piece or bundle can be distinguished at port of discharge. If the Merchant fails to meet the aforesaid requirements, the Carrier shall neither be responsible for correct delivery not liable for expenses arising therefrom.

20. **BULK CARGO, GOODS TO MOVE ONE CONSIGNEE.** (1) As the Carrier has no reasonable means of checking the weight of bulk cargo, any reference to such weight in this Bill of Lading shall be deemed to be for reference only, but shall constitute in no way evidence against the Carrier.
   (2) Where bulk cargo or goods without marks or cargo with the same marks are shipped to more than one Consignee, the Consignees or Owners of the goods shall jointly and severally bear any expense or loss in dividing the goods, parcels into pro rata quantities and any deficiency shall fall upon them in such proportion as the Carriers, his servants or agents shall decide.

21. **HEAVY LIFTS AND AWKWARD CARGO.** Any one piece or package of cargo weighs 2000 kilos or upwards and any awkward cargo with a length of 9 meters or upwards must be clearly and boldly marked with the weight and/or dimensions and/or length by the Shipper and shall be loaded and discharged by shore crane or otherwise at the ship's option and at the risk and expense of the Merchant. If any damage, loss or liability to the ship, lighter, wharf, quay cranes, hoisting tackle, or whatsoever or to whomsoever occurs owing to the lack of statement or mis-statement of weight, measurement or length, the Merchant shall be responsible for such damage, loss or liability.

22. **FUMIGATION.** In the event of fumigation of goods on board for whatever reason, the Carrier shall not be liable for damage to goods without actual proof of the Carrier's negligence which shall not be presumed against him, and all expenses incurred are for Merchant's account.

23. **OPTION.** The port of discharge for optional goods must be declared to the vessel's Master at the first other vessel's port of call, at the option not later than 48 hours before the vessel's arrival there. In the absence of such declaration the Carrier may elect to discharge the goods at any optional port and the contract of carriage shall then be considered as having been fulfilled. Any option must be for the total quantity of goods under this Bill of Lading.

24. **GENERAL AVERAGE AND NEW JASON CLAUSE.** (1) General average shall be adjusted, stated and settled according to the York-Antwerp Rules, 1974, at any port or place at the carrier's option.
   (2) In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever whether due to negligence or not, for which, or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the goods, Shippers, Consignees or Owners of the goods shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers, consignees or Owners of the goods to the Carrier before delivery.

25. **BOTH TO BLAME COLLISION CLAUSE.** If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any negligent act or default of the master, mariner, pilot or of the servants of the Carrier in the navigation or in the management of the vessel, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of said goods paid or payable by the others or non-carrying vessel or her Owners to the Owners of said goods and set-off, recouped or recovered by the other or non-carrying vessel or her Owners as part of their claim against the carrying ship or Carrier. The forgoing provisions shall also apply where the Owners, operators of those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels or objects are at fault in respect of a collision, contact stranding or other accident.

26. **WAR, QUARANTINE, ICE, STRIKES, CONGESTION ETC.** Should it appear that war, blockade, pirate epidemics, quarantine, ice, strikes, congestion and other causes beyond the Carrier's control would prevent the vessel from safely reaching the port of destination and/or discharging the goods thereat, the Carrier is entitled to discharge the goods at the port of loading or any other safe and convenient port and the contract of carriage shall be deemed to have been fulfilled. Any extra expenses incurred under the aforesaid circumstances shall be borne by the Merchant.

Sky energy international pte ltd - ENDORSED TO
THE ORDER OF SVENSKA HANDELSBANKEN AS PER
GENERAL RELEASE

**11**

Shipper

# BILL OF LADING

| B/L No. | |
| --- | --- |
| Nationality of Ocean Vessel | |

WEST PACIFIC PETROCHEMICAL CO.,LTD.DALIAN

Consignee

TO THE ORDER OF SK ENERGY INTERNATIONAL
PTE LTD

Notify Address

Shipped on board the vessel named herein in apparent good order and condition (unless otherwise indicated) the goods or packages specified herein and to be discharged at the above mentioned port of discharge or as near thereto as the vessel may safely get and be always afloat.

The weight, measure, marks, numbers, quality, contents and value, being particulars furnished by the Shipper, are not checked by the Carrier on loading. The Shipper, Consignee and the Holder of this Bill of Lading hereby expressly accept and agree to all-printed, written or stamped provisions,exceptions and conditions of this Bill of Lading, including those on the back hereof. One of the Bills of Lading duly endorsed must be surrendered in exchange for the goods or delivery order.

In witness whereof, the Carrier or his Agents has signed Bills of Lading all of this tenor and date, one of which being accomplished, the others to stand void.

Shippers are requested to note particularly the exceptions and conditions of this Bill of Lading with reference to the validity of the insurance upon their goods.

**Original**

| Pre-carriage by | ※Place of Receipt by Pre-carrier |
| --- | --- |

| Ocean Vessel | Port of Loading |
| --- | --- |
| DYNAMIC EXPRESS | DALIAN, CHINA |

| Port of Discharge | ※Final destination(if goods to be transhipped at port of discharge) | Freight payable at | Number of original B(s)L |
| --- | --- | --- | --- |
| ONE OR SAFE PORT(S),KOREA | | | THREE/THREE |

| Marks & Nos. /Container Nos. | Number and kind of packages,description of goods | Gross weight kgs | Measurement m³ |
| --- | --- | --- | --- |
| N/M | IN BULK<br><br>NAPHTHA<br><br><br>TOTAL WEIGHT:28,831.588MTS<br><br>28,376.508LTS<br><br>41,192.142KL AT 15 DEG C<br><br>259,282.07US BBLS AT 60 DEG F<br><br><br><br>CLEAN ON BOARD | | |

Particulars Furnished by Merchants

| TOTAL PACKAGES (IN WORDS) | |
| --- | --- |

| Freight and charges | Place of B(s)/L Issue | Dated |
| --- | --- | --- |
| | DALIAN CHINA  APR.28,2008 | |
| **FREIGHT PAYABLE AS PER CHARTER PARTY** | Signed for the Carrier | |

AS MASTER:

```
MT "DYNAMIC EXPRESS"
PORT OF REG. : PANAMA
IMO NO.    : 9032660
CALL SIGN  : 3FJP3
GRT        : 25014
NRT        : 11349
BHP        : 12750
```

※)Applicable only when document used as a Through Bill of Lading

The following are the conditions and exceptions hereinbefore referred to:

1. **DEFINITION.** "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of the Bill of Lading and the Owner of the Goods.

2. **JURISDICTION.** All disputes arising under and in connection with this Bill of Lading shall be settled in the flag-state of the ship, or otherwise in the place mutually agreed between the Carrier and the Merchant.

3. **PARAMOUNT CLAUSE.** This Bill of lading shall be subject to the Hague Rules contained in the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading dated at Brussels the 25th August 1924, or the corresponding legislation of the flag-state of the ship. If the stipulations of this Bill of Lading are wholly or partly contrary thereto, this Bill of Lading shall be read as if such stipulation or part thereof, as the case may be, were deleted.

4. **PERIOD OF RESPONSIBILITY.** The responsibility of the Carrier shall commence from the time when the goods are loaded on board the vessel and shall cease when they are discharged from the vessel.
   The Carrier shall not be liable for loss of or damage to the goods before loading and after discharging from the vessel however such loss or damage arises.

5. **PACKING AND MARKS.** The Merchant shall have the goods properly packed and accurately and clearly marked before shipment. The port of destination of the goods should be marked in letters not less than 5 cm high in such a way as will remain legible until their delivery. All fines and expenses arising from insufficiency or inadequacy of packing or marks shall be borne by the Merchant.

6. **FREIGHT AND OTHER CHARGES.** (1) Advance freight together with other charges is due on shipment if not prepaid, though stipulated, the freight and other charges shall be paid by the Merchant plus 5% interest per annum running from the date of notification for their payment.
   If the cargo shipped are perishables, low cost goods, live animals, deck cargo or goods for which there is no Carrier's agent at the port of destination, the freight for such cargo and all related charges shall be paid at the time of shipment.
   Freight payable at destination together with other charges is due on vessel's arrival. Advance freight and/or freight payable at destination shall be paid to the Carrier in full, and non-returnable and non-deductable irrespective of whatever loss or damage may happen to vessel and cargo or either of them.
   (2) All dues, taxes and charges or any other expenses in connection with the goods shall be paid by the Merchant.

7. **INCORRECT STATEMENTS.** The Carrier is entitled at port of shipment and/or port of destination, to verify the quantity, weight, measurement and contents of the goods as declared by the Merchant. If the weight, measurement and/or contents of such goods as stated in the Bill of Lading turned out to be inconsistent with that of the goods actually loaded, and the freight paid falls short of the amount which would have been due if such declaration had been correctly given, the Carrier is entitled to collect from the Merchant as liquidated damages to the Carrier double the amount of difference between the freight for the goods actually shipped and that mis-stated.
   The Merchant shall be liable for loss of and damage to the Carrier arising out of or resulting from inaccuracies in stating the description, quantity, weight, measurement or contents of the goods and shall indemnify the Carrier for the costs and expenses in connection with weighing, measuring and checking such goods.

8. **LOADING, DISCHARGING AND DELIVERY.** The goods shall be supplied and taken delivery of by the Owner of the goods as fast as the vessel can take and discharge them, without interruption, by day and if required by Carrier also by night, sundays and holidays included, notwithstanding any custom of the port to the contrary and the Owner of the goods shall be liable for all losses or damages including demurrage incurred in default thereof.
   Discharge may commence without previous notice, if the goods are not taken delivery of by the Receiver from alongside the vessel without delay, or if the Receiver refuses to take delivery of the goods, or in case there are unclaimed goods the Carrier shall be at liberty, to land such goods on shore or any other proper places at the sole risk and expense of the Merchant and the Carrier's responsibility of delivery of cargo shall be deemed to have been fulfilled.
   Weighing on board is only allowed by special permission of the Carrier, including detention and extra costs of discharging, shall be for account of the Receivers of Consignees, notwithstanding any custom of the port to the contrary.
   If the goods are unclaimed during a reasonable time, or wherever the goods will become deteriorated, decayed or worthless, the Carrier may, at his discretion and subject to his lien, and without any responsibility attaching to him self, abandon or otherwise dispose of such goods solely at the risk and expense of the Merchant.

9. **LIGHTERAGE.** Any lighterage in or off ports of loading or ports of discharge shall be for the account of the Merchant.

10. **LIEN.** The Carrier shall have a lien on the goods and any document relating thereto for freight, dead freight, demurrage and any other amount payable by the Merchant and for General Average contributions for whomsoever due and for the cost of recovering the same, and for this purpose shall have the right to sell or otherwise dispose of the goods. If on sale of the goods, the proceeds fail to cover the amount due and the cost and expenses incurred, the Carrier shall be entitled to recover the deficit from the Merchant.

11. **NOTICE OF LOSS OR DAMAGE.** THE BAR. Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agent at the port of discharge before or at the time of removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the Carrier of the goods as described in the Bill of Lading.
   If the loss or damage is not apparent, the notice must be given within three days of the delivery.
   The notice in writing need not be given when the state of the goods has at the time of their receipt been the subject of joint survey or inspection.
   In any event the Carrier and the vessel shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.
   In the case of any actual or apprehended loss or damage, the Carrier and the Receiver shall give all reasonable facilities to each other for inspecting and tallying the goods.

12. **LIMITATION OF LIABILITY.** All claims for which the Carrier may be liable shall be calculated on the basis of the Merchant's net invoice cost, plus freight and insurance premium, if paid. In no event shall the Carrier be liable for any loss of possible profit or any consequential loss.
    The Carrier for any loss or damage to the goods shall be limited to an amount not exceeding £ 100 per package or freight unit unless the value of the goods higher than the amount is declared in writing by the Shipper before receipt of the goods by the Carrier and inserted in this Bill of Lading and extra freight paid as required. If the actual value of the goods per package or per freight unit exceeds such value, the declared value shall nevertheless be deemed to be the declared value and the Carrier's liability, if any, shall not be the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

13. **FORWARDING, SUBSTITUTE OF VESSEL THROUGH CARGO AND TRANSHIPMENT.** If necessary, the Carrier shall be at liberty to carry the goods to their port of destination by other vessel or vessels either belonging to the Carrier or other persons or by rail or other means of transport proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination, and to tranship, lighten, land the goods on shore or afloat and reship and forward same at the Carrier's expenses but at Merchant's risk. The responsibility of the Carrier shall be limited to the part of the transport performed by him on the vessel under his management.

14. **DANGEROUS GOODS, CONTRABAND.** (1) The Merchant undertakes not to tender for transportation any goods which are of a dangerous, inflammable, radio-active, and/or any harmful nature without previously giving written notice of their nature to the Carrier and marking the goods on the container or other covering on the outside as required by any laws or regulations which may be applicable during the carriage.
    (2) Whenever the goods are discovered to have been shipped without complying with the subclause (1) above or the goods are found to be contraband or prohibited by any laws or regulations of the port of loading, discharge or call or any place or waters during the carriage, the Carrier shall be entitled to have such goods rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation and the Merchant shall be liable for and indemnify the Carrier against any kind of loss, damage or liability including loss of freight and any expenses directly or indirectly arising out of or resulting from such shipment.
    (3) If any goods shipped complying with the sub-clause (1) above become a danger to the ship or cargo, they may in like manner be rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation except to General Average, if any.

15. **DECK CARGO, LIVE ANIMALS AND PLANTS.** Cargo on deck, plants and live animals are received, handled, carried, kept and discharged at Merchant's risk and the Carrier shall not be liable for loss thereof or damage thereto.

16. **CARGO IN CONTAINERS.** (1) Goods may be stowed by the Carrier or his agents or servants in containers and containers whether stowed as aforesaid or received fully stowed may be carried on or under deck without notice. The Carrier's liability for such carriage shall likewise be governed by the terms and conditions of this Bill of Lading irrespective of Clause 15 hereof notwithstanding the fact that the goods are being carried on deck and the goods shall contribute to General Average and shall receive compensation in General Average.
    (2) If a container has not been filled, packed, stuffed or loaded by the Carrier, the Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any injury, loss, damage, liability or expense incurred by the Carrier if such injury, loss, damage, liability or expense has been caused by:
    1) the manner in which the container has been filled, packed, stuffed or loaded; or
    2) the unsuitability of the contents for carriage in containers; or
    3) the unsuitability or defective condition of the container which would have been apparent upon reasonable inspection by the Merchant at or prior to the time the container was filled, packed, stuffed or loaded.
    If a container which has not been filled, packed, stuffed or loaded by the Carrier is delivered by the Carrier with the seal intact, such delivery shall be deemed as full and complete performance of the Carrier's obligation hereunder and the Carrier shall not be liable for any loss of or damage to the contents of the container. The Shipper shall inspect containers before stuffing them and the use of the containers shall be prima facie evidence of their being sound and suitable for use.

17. **REFRIGERATED GOODS.** Before loading goods in any insulated space, the Carrier shall, in addition to the Class Certificate, obtain the certificate of the Classification Society's Surveyor or other competent person stating that such insulated space and refrigerating machinery are in the opinion of the surveyor or other competent person fit and safe for the carriage and preservation of refrigerated goods. This aforesaid certificate shall be conclusive evidence against the Merchant.
    Receivers have to take delivery of refrigerated cargo as soon as the vessel is ready to deliver, otherwise the Carrier shall land this goods at the wharf at the Merchant's risk and expense.

18. **TIMBER.** Any statement in this Bill of Lading to the effect that timber has been shipped "in apparent good order and condition "does not involve any admission by the Carrier as to the absence of stains, shakes, splits holes or broken pieces, for which the Carrier accepts no responsibility.

19. **IRON AND STEEL.** Every piece of iron and Steel is to be distinctly and permanently marked with oil paint and every bundle securely fastened, distinctly and permanently marked with oil paint and metal tagged, by the Merchant, so that each piece or bundle can be distinguished at port of discharge. If the Merchant fails to meet the aforesaid requirements, the Carrier shall neither be responsible for correct delivery not liable for expenses arising therefrom.

20. **BULK CARGO, GOODS TO MORE THAN ONE CONSIGNEE.** (1) As the Carrier has no reasonable means of checking the weight of bulk cargo, any reference to such weight in this Bill of Lading shall be deemed to be for reference only, but shall constitute in no way evidence against the Carrier.
    (2) Where bulk cargo or goods, which marks or cargo with the same marks are shipped to more than one Consignee, the Consignees or Owners of the goods shall jointly and severally bear any expense or loss in dividing the goods parcels into pro rata quantities and any deficiency shall fall upon them in such proportion as the Carrier, his servants or agents shall decide.

21. **HEAVY LIFTS AND AWKWARD CARGO.** Any one piece or package of cargo weighs 2000 kilos or upwards and any awkward cargo with a length of 9-meters or upwards must be clearly and boldly marked with the weight and /or dimensions and/or length by the Shipper and shall be loaded and discharged by shore crane or otherwise at the ship's option and at the risk and expense of the Merchant.If any damage, loss or liability to the ship, lighter, wharf, quay cranes, hoisting tackle, or whatsoever or to whomsoever occurs owing to the lack of statement or mis-statement of weight, measurement or length, the Merchant shall be responsible for such damage, loss or liability.

22. **FUMIGATION.** In the event of fumigation of goods on board for whatever reason, the Carrier shall not be liable for damage to goods without actual proof of the Carrier's negligence which shall not be presumed against him, and all expenses incurred as for the fumigation shall be for the account of the Merchant.

23. **OPTION.** The port of discharge for optional goods must be declared to the vessel's agent at the first port of call named in the option not later than 48 hours before the vessel's arrival there. In the absence of such declaration the Carrier may elect to discharge at the first or any optional port and the contract of carriage shall then be considered as having been fulfilled. Any option must be for the total quantity of goods under this Bill of Lading.

24. **GENERAL AVERAGE AND NEW JASON CLAUSE.** General average shall be adjusted, stated and settled according to the York-Antwerp Rules, 1974, at any port or place at the carrier's option.
    (2) In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever whether due to negligence or not, for which, or for the consequences of which the Carrier is not responsible by statute contract or otherwise, the goods, Shippers, Consignees or Owners of the goods shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers, consignees or Owners of the goods to the Carrier before delivery.

25. **BOTH TO BLAME COLLISION CLAUSE.** If the liability for any collision with another vessel as a result of the negligence of the other vessel and any act neglect or default of the master, mariner, pilot or of the servant of the Carrier in the navigation or in the management of the vessel, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of said goods paid or payable by the others or non-carrying vessel or her Owners to the Owners of said goods and set-off, recouped or recovered by the other or non-carrying vessel or her Owners as part of their claim against the carrying ship or Carrier. The forgoing provisions shall also apply where the Owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision, contact, stranding or other accident.

26. **WAR, QUARANTINE, ICE,STRIKES, CONGESTION ETC.** Should it appear that war, blockade, pirate, epidemics, quarantine, ice, strikes, congestion and other causes beyond the Carrier's control would prevent the vessel from safely reaching the port of destination and/or discharging the goods thereat, the Carrier is entitled to discharge the goods at the port of loading or any other safe and convenient port and the contract of carriage shall be deemed to have been fulfilled. Any extra expenses incurred under the aforesaid circumstances shall be borne by the Merchant.

GENERAL AGENTS IN BELGIUM: TO: THE AGENCY OF ING BELGIUM

Authorised Signature(s)

Shipper

# BILL OF LADING

| B/L No. |
|---|
| Nationality of Ocean Vessel |

WEST PACIFIC PETROCHEMICAL CO.,LTD.DALIAN

Consignee

TO THE ORDER OF SK ENERGY INTERNATIONAL
PTE LTD

Notify Address

Shipped on board the vessel named herein in apparent good order and condition (unless otherwise indicated) the goods or packages specified herein and to be discharged at the above mentioned port of discharge or as near thereto as the vessel may safely get and be always afloat.

The weight, measure, marks, numbers, quality, contents and value, being particulars furnished by the Shipper, are not checked by the Carrier on loading. The Shipper, Consignee and the Holder of this Bill of Lading hereby expressly accept and agree to all printed, written or stamped provisions, exceptions and conditions of this Bill of Lading, including those on the back hereof. One of the Bills of Lading duly endorsed must be surrendered in exchange for the goods or delivery order.

In witness whereof, the Carrier or his Agents has signed Bills of Lading all of this tenor and date, one of which being accomplished, the others to stand void.

Shippers are requested to note particularly the exceptions and conditions of this Bill of Lading with reference to the validity of the insurance upon their goods.

| Pre-carriage by | Place of Receipt by Pre-carrier |
|---|---|

**Original**

| Ocean Vessel | Port of Loading |
|---|---|
| DYNAMIC EXPRESS | DALIAN, CHINA |

| Port of Discharge | Final destination(if goods to be transhipped at port of discharge) | Freight payable at | Number of original B(s)/L |
|---|---|---|---|
| ONE OR SAFE PORT(S),KOREA | | | THREE/THREE |

| Marks & Nos. /Container Nos. | Number and kind of packages,description of goods | Gross weight kgs | Measurement m³ |
|---|---|---|---|
| N/M | IN BULK<br>NAPHTHA<br><br><br>TOTAL WEIGHT: 28,831.588MTS<br>28,376.508LTS<br>41,192.142KL AT 15 DEG C<br>259,282.07US BBLS AT 60 DEG F<br><br><br>CLEAN ON BOARD | | |

| TOTAL PACKAGES (IN WORDS) | | | |
|---|---|---|---|

| Freight and charges | Place of B(s)/L Issue | Dated |
|---|---|---|
| | DALIAN CHINA  APR.28,2008 | |

FREIGHT PAYABLE AS PER CHARTER PARTY

Signed for the Carrier

AS MASTER

| MT "DYNAMIC EXPRESS" | |
|---|---|
| PORT OF REG. | : PANAMA |
| IMO NO. | : 9032680 |
| CALL SIGN | : 3FJP3 |
| GRT | : 25044 |
| NRT | : 11849 |
| BHP | : 12750 |

Particulars Furnished by Merchants

※)Applicable only when document used as a Through Bill of Lading

The following are the conditions and exceptions hereinbefore referred to:

1. DEFINITION. "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of the Bill of Lading and the Owner of the Goods.

2. JURISDICTION. ALL disputes arising under and in connection with this Bill of Lading shall be settled in the flag-state of the ship, or otherwise in the place mutually agreed between the Carrier and the Merchant.

3. PARAMOUNT CLAUSE. This Bill of lading shall be subject to the Hague Rules contained in the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading dated at Brussels the 25th August 1924, or the corresponding legislation of the flag-state of the ship. If the stipulations of this Bill of Lading are wholly or partly contrary thereto, this Bill of Lading shall be read as if such stipulation or part thereof, as the case may be, were deleted.

4. PERIOD OF RESPONSIBILITY. The responsibility of the Carrier shall commence from the time when the goods are loaded on board the vessel and shall cease when they are discharged from the vessel.
The Carrier shall not be liable for loss of or damage to the goods before loading and after discharging from the vessel howsoever such loss or damage arises.

5. PACKING AND MARKS. The Merchant shall have the goods properly packed and accurately and clearly marked before shipment. The port of destination of the goods should be marked in letters not less than 5 cm high in such a way as will remain legible until their delivery. All fines and expenses arising from insufficiency or inadequacy of packing or marks shall be borne by the Merchant.

6. FREIGHT AND OTHER CHARGES. (1) Advance freight together with other charges is due on shipment if not prepaid, though stipulated, the freight and other charges shall be paid by the Merchant days 5% interest per annum running from the date of notification for their payment.
If the cargo shipped are perishables, low cost goods, live animals, deck cargo or goods for which there is no Carrier's agent at the port of destination, the freight for such cargo and all related charges shall be paid at the time of shipment.
Freight payable at destination together with other charges is due on vessel's arrival. Advance freight and/or freight payable at destination shall be paid to the Carrier in full, and non-returnable and non-deductible irrespective of whatever loss or damage may happen to vessel and cargo or either of them.
(2) All dues, taxes and charges or any other expenses in connection with the goods shall be paid by the Merchant.

7. INCORRECT STATEMENTS. The Carrier is entitled at port of shipment and/or port of destination, to verify the quantity, weight, measurement and contents of the goods as declared by the Merchant. If the weight, measurement and/or contents of such goods as stated in the Bill of Lading turned out to be inconsistent with that of the goods actually loaded, and the freight paid falls short of the amount which would have been due if such declaration had been correctly given, the Carrier is entitled to collect from the Merchant as liquidated damages to the Carrier double the amount of difference between the freight for the goods actually shipped and that mis-stated.
The Merchant shall be liable for loss of and damage to the vessel and/or goods arising or resulting from inaccuracies in stating the description, quantity, weight, measurement or contents of the goods and shall indemnify the Carrier for the costs and expenses in connection with weighing, measuring and checking such goods.

8. LOADING, DISCHARGING AND DELIVERY. The goods shall be supplied and taken delivery of by the Owner of the goods as fast as the vessel can take and discharge them, without interruption, by day and if required by Carrier also by night, sundays and holidays included, notwithstanding any custom of the port to the contrary and the Owner of the goods shall be liable for all losses or damages including demurrage incurred in default thereof.
Discharge may commence without previous notice, if the goods are not taken delivery of by the Receiver from alongside the vessel without delay, or if the Receiver refuses to take delivery of the goods, or in case there are unclaimed goods the Carrier shall be at liberty, to land such goods on shore or any other proper places at the sole risk and expense of the Merchant and the Carrier's responsibility of delivery of cargo shall be deemed to have been fulfilled.
Weighing on board is only allowed by special permission of the Carrier, including detention and extra costs of discharging, shall be for account of the Receivers or Consignees, notwithstanding any custom of the port to the contrary.
If the goods are unclaimed during a reasonable time, or wherever the goods will become deteriorated, decayed or worthless, the Carrier may, at his discretion and subject to his lien, and without any responsibility attaching to him,sell, abandon or otherwise dispose of such goods solely at the risk and expense of the Merchant.

9. LIGHTERAGE. ANY lighterage in or off ports of loading or ports of discharge shall be for the account of the Merchant.

10. LIEN. The Carrier shall have a lien on the goods and any document relating thereto for freight, dead freight, demurrage and any other amount payable by the Merchant and for General Average contributions for whomsoever due and for the cost of recovering the same, and for this purpose shall have the right to sell or otherwise dispose of the goods. If on sale of the goods, the proceeds fail to cover the amount due and the cost and expenses incurred, the Carrier shall be entitled to recover the deficit from the Merchant.

11. NOTICE OF LOSS, DAMAGE, TIME BAR. Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the Carrier of the goods as described in the Bill of Lading.

If the loss or damage is not apparent, the notice must be given within three days of the delivery.

The notice in writing need not be given if the state of the goods has at the time of their receipt been the subject of joint survey or inspection.

In any event the Carrier and the vessel shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.

In the case of any actual or apprehended loss or damage, the Carrier and the Receiver shall give all reasonable facilities to each other for inspecting and tallying the goods.

12. LIMITATION OF LIABILITY. All claims for which the Carrier may be liable shall be calculated on the basis of the Merchant's net invoice cost, plus freight and insurance premium, if paid. In no event shall the Carrier be liable for any loss of possible profit or any consequential loss.
The Carrier for any loss of or damage to the goods shall be limited to an amount not exceeding £100 per package or freight unit unless the value of the goods higher than the amount is declared in writing by the Shipper before receipt of the goods by the Carrier and inserted in this Bill of Lading and extra freight paid as required. If the actual value of the goods per package or per freight unit exceeds such value, the declared value shall nevertheless be deemed to be the declared value and the Carrier's liability, if any, shall not be the declared value and any partial loss or damage shall be adjusted pro-rata on the basis of such declared value.

13. FORWARDING, SUBSTITUTE OF VESSEL THROUGH CARGO AND TRANSHIPMENT. If necessary, the Carrier shall be at liberty to carry the goods to their port of destination by other vessel or vessels either belonging to the Carrier or other persons or by rail or other means of transport proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination, and to tranship, lighter, land and store the goods on shore or afloat and reship and forward same at the Carrier's expense but at Merchant's risk. The responsibility of the Carrier shall be limited to the part of the transport performed by him on the vessel under his management.

14. DANGEROUS GOODS, CONTRABAND. (1) The Merchant undertakes not to tender for transportation any goods which are of a dangerous, inflammable, radio-active, and/or any harmful nature without previously giving written notice of their nature to the Carrier and marking the goods and the container or other covering on the outside as required by any laws or regulations which may be applicable during the carriage.
(2) Whenever the goods are discovered to have been shipped without complying with the subclause (1) above or the goods are found to be contraband or prohibited by any

laws or regulations of the port of loading, discharge or call or any place or waters during the carriage,the Carrier shall be entitled to have such goods rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation and the Merchant shall be liable for and indemnify the Carrier against any kind of loss, damage or liability including loss of freight and any expenses directly or indirectly arising out of or resulting from such shipment.
(3) If any goods shipped complying with the sub-clause (1) above become a danger to the ship or cargo, they may in like manner be rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation except in General Average, if any.

15. DECK CARGO, LIVE ANIMALS AND PLANTS. Cargo on deck,plants and live animals are received,handled,carried,kept and discharged at Merchant's risk and the Carrier shall not be liable for loss thereof or damage thereto.

16. CARGO IN CONTAINERS. (1) Goods may be stowed by the Carrier or his agents or servants in containers and containers whether stowed as aforesaid or received fully stowed may be carried on or under deck without notice. The Carrier's liability for such carriage shall likewise be governed by the terms and conditions of this Bill of Lading irrespective of Clause15 hereof notwithstanding the fact that the goods are being carried on deck and the goods shall contribute to General Average and shall receive compensation in General Average. (2) If a container has not been filled, packed, stuffed or loaded by the Carrier, the Carrier shall not be liable for loss of or damage to the contents and the Merchant shall indemnify the Carrier against any injury, loss, damage, liability or expense incurred by the Carrier if such injury,loss, damage,liability or expense has been caused by:
1) the manner in which the container has been filled, packed, stuffed or loaded; or.
2) the unsuitability of the contents for carriage in containers;or
3) the unsuitability or defective condition of the container which would have been apparent upon reasonable inspection by the Merchant at or prior to the time the container was filled,packed,stuffed or loaded.
If a container which has not been filled, packed, stuffed or loaded by the Carrier is delivered by the Carrier with the seal intact, such delivery shall be deemed as full and complete performance of the Carrier's obligation hereunder and the Carrier shall not be liable for any loss of or damage to the contents of the container. The Shipper shall inspect containers before stuffing them and the use of the containers shall be prima facie evidence of their being sound and suitable for use.

17. REFRIGERATED GOODS. Before loading goods in any insulated space, the Carrier shall, in addition to the Class Certificate, obtain the certificate of the Classification Society's Surveyor or other competent person, stating that such insulated space and refrigerating machinery are in the opinion of the surveyor or other competent person fit and safe for the carriage and preservation of refrigerated goods. The aforesaid certificate shall be conclusive evidence against the Merchant.
Receivers have to take delivery of refrigerated cargo as soon as the vessel is ready to deliver,otherwise the Carrier shall land the goods at the wharf at the Merchant's risk and expenses.

18. TIMBER.Any statement in this Bill of Lading to the effect that timber has been shipped "in apparent good order and condition" does not involve any admission by the Carrier as to the absence of stains, shakes, splits holes or broken pieces, for which the Carrier accepts no responsibility.

19. IRON AND STEEL. Every piece of Iron and Steel is to be distinctly and permanently marked with oil paint and every bundle securely fastened, distinctly and permanently marked with oil paint and metal tagged, by the Merchant, so that each piece or bundle can be distinguished at port of discharge. If the Merchant fails to meet the aforesaid requirements,the Carrier shall neither be responsible for correct delivery not liable for expenses arising therefrom.

20. BULK CARGO, GOODS TO MORE THAN ONE CONSIGNEE. (1)As the Carrier has no reasonable means of checking the weight of bulk cargo, any reference to such weight in this Bill of Lading shall be deemed to be for reference only,but shall constitute in no way evidence against the Carrier.
(2)Where bulk cargo or goods without marks or cargo with the same marks are shipped to more than one Consignee ,the Consignees or Owners of the goods shall jointly and severally bear any expense or loss in dividing the goods parcels into pro rata quantities and any deficiency shall fall upon them in such proportion as the Carriers,his servants or agents shall decide.

21. HEAVY LIFTS AND AWKWARD CARGO.Any one piece or package of cargo weighs 2000 kilos or upwards and any awkward cargo with a length of 9 meters or upwards must be clearly and boldly marked with the weight and /or dimensions and/or length by the Shipper and shall be loaded and discharged by shore crane or otherwise at the ship's option and at the risk and expense of the Merchant.If any damage,loss or liability to the ship,lighter,wharf, quay crane,holding tackle,or whatsoever or to whomsoever occurs owing to the lack of statement or mis-statement of weight, measurement or length,the Merchant shall be responsible for such damage,loss or liability.

22. FUMIGATION.In the event of fumigation of goods on board for whatever reason,the Carrier shall not be liable for damage to goods without actual proof of the Carrier's negligence which shall not be presumed against him,and all expenses incurred are for the Merchant's account only.

23. OPTION.The port of discharge of optional goods must be declared to the vessel's agents at the first or optional ports named in the option not later than 48 hours before the vessel's arrival there. In the absence of such declaration the Carrier may elect to discharge at the first or any optional port and the removal of cargo shall then be considered as having been fulfilled.Any option shall not be for the total quantity of goods under this Bill of Lading.

24. GENERAL AVERAGE AND NEW JASON CLAUSE. General average shall be adjusted,stated and settled according to the York-Antwerp Rules, 1974, at any port or place at the carrier's option.
(2) In the event of accident, danger, damage or disaster before or after the commencement of the voyage,resulting from any cause whatsoever whether due to negligence or not, for which,or for the consequence of which the Carrier is not responsible by statute contract or otherwise, the goods, Shippers, Consignees or Owners of the goods shall contribute with the Carrier in General Average to the payment of any sacrifices,losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.If a saving ship is owned or operated by the Carrier,salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers.Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall,if required,be made by the goods, Shippers, consignees or Owners of the goods to the Carrier before delivery.

25. BOTH TO BLAME COLLISION CLAUSE. If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act,neglect or default of the master, mariner, pilot or of the servants of the Carrier in the navigation or in the management of the vessel, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of said goods paid or payable by the others or non-carrying vessel or her Owners to the Owners of said goods and set-off, recouped or recovered by the other or non-carrying vessel or her Owners as part of their claim against the carrying ship or Carrier. The forgoing provisions shall also apply where the Owners,operators or those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels of objects are at fault in respect of a collision, contact stranding or other accident.

26. WAR, QUARANTINE, ICE,STRIKES, CONGESTION ETC. Should it appear that war, blockade,strike,epidemics,quarantine, ice, strikes, congestion and other causes beyond the Carrier's control would prevent the vessel from safely reaching the port of destination and/or discharging the goods thereof ,the Carrier is entitled to discharge the goods at the port of loading or any other safe and convenient port and the contract of carriage shall be deemed to have been fulfilled. Any extra expenses incurred under the aforesaid circumstances shall be borne by the Merchant.

Shipper/Merchant_____
S.A. Energy Transportation N.V.
TO. Antwerp OF ING BELGIUM
GENERAL BRANCH

Authorised Signature(s)

```
-------------------- Instance Type and Transmission -------------
Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status  : Network Ack
Priority/Delivery   : Normal
Message Input Reference       : 1827 080417BBRUCHGTAXXX2407003838
------------------------ Message Header -------------------------
Swift Input                        : FIN 700 Issue of a Documentary Credit
Sender      : BBRUCHGTXXX
          ING BELGIUM NV/SA, BRUSSELS, GENEVA BRANCH (FORMER
          GENEVA CH
Receiver    : BNPASGSGXXX
          BNP PARIBAS - SINGAPORE BRANCH
          SINGAPORE SG
------------------------- Message Text --------------------------
 27: Sequence of Total
     1/2
 40A: Form of Documentary Credit
     IRREVOCABLE
 20: Documentary Credit Number
     DOC-641816-G3
 31C: Date of Issue
     080417
 40E: Applicable Rules
     UCP LATEST VERSION
 31D: Date and Place of Expiry
     080615 ANY BANK IN SINGAPORE
 50: Applicant
     PROJECTOR ASIA PTE LTD
     NO.2 BATTERY ROAD
     HEX 22-01 MAYBANK TOWER
     SINGAPORE 049907
 59: Beneficiary - Name & Address
     SK ENERGY ASIA PTE LTD        SK ENERGY INT'L PTE LTD
     4 SHENTON WAY
     HEX 11-02/04 SGX CENTRE 2
     SINGAPORE 068807
 32B: Currency Code, Amount
     Currency     : USD (US DOLLAR)
     Amount       :       #27000000,#
 39A: Percentage Credit Amt Tolerance
     00/00
 41D: Available With...By... - Name&Addr
     AT ANY BANK IN SINGAPORE
     BY DEF PAYMENT    BY NEGOTIATION
 42P: Deferred Payment Details
     AT 30 DAYS AFTER B/L DATE (B/L DATE    FROM
     TO COUNT AS DAY ZERO)
 44C: Latest Date of Shipment
     080430
 45A: Descriptn of Goods &/or Services
     27,000-30,000 METRIC TONNES NAPHTHA FOB ONE SAFE PORT/BERTH,
     DALIAN CHINA
     PER VESSEL MT 'PRO EMERALD' OR SUBS

     PRICE:
     THE FOB DALIAN PRICE PER METRIC TONNE SHALL BE BASED ON BILL OF
     LADING (B/L) QUANTITY.

     THE PRICE PER METRIC TONNE SHALL BE EQUIVALENT TO THE ARITMETIC
     MEAN OF THE 11 DAY MEAN OF THE QUOTATIONS FOR 'NAPHTHA'
     APPEARING UNDER THE HEADING 'CNF JAPAN' AS PUBLISHED BY PLATT'S
     ASIA-PACIFIC/
     ARAB GULF MARKETSCAN ON THE B/L DATE (CENTER DATE) AND THE FIVE
     QUOTATIONS
     IMMEDIATELY PRECEDING THE B/L DATE AND THE FIVE QUOTATIONS
```

IMMEDIATELY
FOLLOWING THE B/L DATE MINUS A FIXED DISCOUNT OF U.S.DOLLAR 4.50
(REPEAT US DOLLAR FOUR POINT FIVE ZERO) PER METRIC TON.

IN CASE OF NO QUOTATION ON B/L DATE, THEN THE FIVE QUOTATIONS
IMMEDIATELY PRECEDING AND THE FIVE QUOTATIONS IMMEDIATELY
FOLLOWING THE B/L DATE TO BE APPLIED.

THE FINAL PRICE SHALL BE ROUNDED OFF TO THREE (3) DECIMAL PLACES
WITH THE THIRD DECIMAL PLACE TO BE INCREASED TO THE NEXT DIGIT
WHENEVER THE FOURTH DECIMAL PLACE IS FIVE OR GREATER THAN FIVE.

ANY PUBLISHED CORRECTION TO ANY OF THE RELEVANT QUOTATIONS SHALL
BE TAKEN INTO ACCOUNT.

46A: Documents Required
DOCUMENTS ISSUED IN ONE ORIGINAL PLUS 3 COPIES, UNLESS SPECIFIED
OTHERWISE:
1)SIGNED COMMERCIAL INVOICE.
2)FULL SET 3/3 ORIGINAL CLEAN ON BOARD OCEAN BILLS OF LADING
ISSUED OR ENDORSED TO THE ORDER OF ING BELGIUM BRUSSELS,
GENEVA BRANCH MARKED 'FREIGHT PAYABLE AS PER CHARTER
PARTY'.
3)CERTIFICATE OF QUANTITY ISSUED OR COUNTERSIGNED BY INDEPENDENT
INSPECTORS AT LOADPORT.
4)CERTIFICATE OF QUALITY ISSUED OR COUNTERSIGNED BY INDEPENDENT
INSPECTORS AT LOADPORT.
5)CERTIFICATE OF ORIGIN.

49: Confirmation Instructions
WITHOUT
78: Instr to Payg/Accptg/Negotg Bank
UPON RECEIPT AT OUR COUNTERS OF THE NEGOTIATING BANK'S TESTED
TELEX/AUTHENTICATED SWIFT CONFIRMING RECEIPT AND COURIERING OF
DOCUMENTS ISSUED IN STRICT CONFORMITY WITH L/C TERMS AND
CONDITIONS, WE SHALL MAKE PAYMENT ON THE DUE DATE IN ACCORDANCE
WITH THE NEGOTIATING BANK'S INSTRUCTIONS PROVIDED SAID TEST TELEX
/AUTHENTICATED SWIFT IS RECEIVED LATEST TWO SINGAPORE/NEW YORK
BANK WORKING DAYS PRIOR TO DUE DATE.
IF RECEIVED LATER, WE SHALL EFFECT PAYMENT VALUE TWO SINGAPORE/
NEW YORK BANK WORKING DAY AFTER RECEIPT OF SAID TESTED TELEX/
AUTHENTICATED SWIFT. THE NEGOTIATING BANK IS TO CONFIRM HAVING
ENDORSED THE ORIGINAL CREDIT INSTRUMENT ON THE REVERSE FOR THE
THE NEGOTIATED AMOUNT.
-------------------------- Message Trailer -------------------------
{MAC:F47EE985}
{CHK:EDE6FFF779A8}
PKI Signature: MAC-Equivalent
---------------------------- Interventions --------------------------
Category     : Network Report
Creation Time : 17/04/08 18:27:34
Application   : SWIFT Interface
Operator     : SYSTEM
Text
{1:F21BBRUCHGTAXXX2407003838}{4:{177:0804171827}{451:0}}

```
-------------------- Instance Type and Transmission --------------
Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status : Network Ack
Priority/Delivery   : Normal
Message Input Reference          : 1827 080417BBRUCHGTAXXX2407003839
                       ---------------- Message Header ----------------------
Swift Input                : FIN 701 Issue of a Documentary Credit
Sender     : BBRUCHGTXXX
     ING BELGIUM NV/SA, BRUSSELS, GENEVA BRANCH (FORMER
     GENEVA CH
Receiver     : BNPASGSGXXX
     BNP PARIBAS - SINGAPORE BRANCH
     SINGAPORE SG
                     ---------------- Message Text ----------------------
```

27: Sequence of Total
2/2

20: Documentary Credit Number
DOC-641816-G3

47B: Additional Conditions
1)IN THE EVENT THAT ABOVE DOCUMENTS 2 TO 5 ARE TEMPORARILY
UNAVAILABLE AT THE TIME OF NEGOTIATION, PAYMENT
WILL BE MADE AGAINST PRESENTATION OF DOCUMENT 1 AND
LETTER OF INDEMNITY ISSUED BY THE
BENEFICIARY IN ONE ORIGINAL WITH WORDING AS FOLLOWS:

QUOTE

LETTER OF INDEMNITY

TO:   PROJECTOR ASIA PTE LTD
       C/O ING BELGIUM, BRUSSELS, GENEVA BRANCH
RE:   L/C NO. DOC-641816-G3
       OF ING BELGIUM, BRUSSELS, GENEVA BRANCH

WE REFER TO A CARGO OF . . . . MT OF . . . . . SHIPPED ON BOARD
M/T . . . . . AT THE PORT OF. . . . PURSUANT TO BILLS OF LADING
DATED . . . . .

ALTHOUGH WE HAVE SOLD AND TRANSFERRED TITLE OF THE SAID CARGO TO
YOURSELVES, WE HAVE BEEN UNABLE TO PROVIDE YOU WITH 3/3 ORIGINAL
BILL OF LADING AND THE OTHER USUAL SHIPPING DOCUMENTS COVERING
THE SAID SALE.
IN CONSIDERARION OF YOUR PAYING THE FULL PURCHASE PRICE OF USD
. . . . .WE HEREBY EXPRESSLY WARRANT THAT WE HAVE SOLD SUCH
. . . . TO YOU HAVING MARKETABLE TITLE TO IT AND FULL RIGHT AND
AUTHORITY TO TRANSFER SUCH TITLE TO YOU AND TO DELIVER SUCH
PRODUCT.

WE FURTHER UNDERTAKE TO MAKE ALL REASONABLE EFFORTS TO LOCATE
AND SURRENDER TO YOU AS SOON AS POSSIBLE 3/3 ORIGINAL
BILLS OF LADING AND OTHER SHIPPING DOCUMENTS AS
CALLED FOR UNDER . . . . . L/C NO. DOC-641816-G3
AND TO PROTECT, INDEMNIFY AND SAVE YOU HARMLESS FROM AND
AGAINST ANY AND ALL DAMAGES, COSTS AND EXPENSES (INCLUDING
BUT NOT LIMITED TO ANY CLAIMS AND DEMANDS WHICH MAY
BE MADE BY A HOLDER OR TRANSFEREE OF ANY OF THE
NEGOTIABLE 3/3 ORIGINAL BILLS OF LADING,
AND SHIPPING DOCUMENTS ABOVE MENTIONED, OR BY ANY OTHER
THIRD PARTY CLAIMING AN INTEREST IN OR LIEN ON THE CARGO
OR PROCEEDS THEREOF.

OUR OBLIGATION TO INDEMNIFY YOU IS, OF COURSE SUBJECT TO THE
CONDITION THAT YOU GIVE US PROMPT NOTICE OF THE ASSERTION OF ANY
CLAIM AND THE FULL OPPORTUNITY TO CONDUCT THE DEFENSE THEREOF.

THIS LETTER OF INDENITY SHALL EXPIRE UPON RECEIPT BY . . . . OF
3/3 ORIGINAL BILL OF LADING, AND OTHER SHIPPING DOCUMENTS FOUND
TO BE IN STRICT CONFORMITY WITH . . . . L/C NO.DOC-641816-G3

THIS LETTER OF INDEMNITY SHALL BE GOVERNED BY AND CONSTRUED IN
ACCORDANCE WITH SINGAPORE LAW AND THE PARTIES SHALL SUBMIT
TO THE JURISDICTION OF THE HIGH COURT IN SINGAPORE.

YOURS FAITHFULLY

SK ENERGY ASIA PTE LTD.
(AUTHORISED SIGNATORY)
(NAME AND TITLE)

UNQUOTE

2)CHARTER PARTY BILLS OF LADING ARE ACCEPTABLE.
3)PHOTOCOPIES OF DOCUMENTS IN LIEU OF COPY DOCUMENTS ARE
ACCEPTABLE.
4) ALL OPENING BANK CHARGES ARE FOR ACCOUNT OF THE APPLICANT.
ALL OTHER CHARGES ARE FOR ACCOUNT OF THE BENEFICIARY.
5)SPELLING/TYPING ERRORS SHALL NOT BE REGARDED AS DISCREPANCIES
EXCEPT IN THE CASE OF QUANTITY(IES) AND VALUE(S).
6)DOCUMENTS PRESENTED LATER THAN 21 DAYS AFTER BILL OF LADING
DATE BUT WITHIN THE VALIDITY OF THE CREDIT ARE ACCEPTABLE.
7)PARTIAL SHIPMENT PROHIBITED/TRANSHIPMENT PROHIBITED.
8)IF PAYMENT DUE DATE FALLS ON SATURDAY OR ANY OTHER BANKING
HOLIDAY IN NEW YORK, PAYMENT SHALL BE MADE ON THE LAST PRECEDING
BANKING DAY. IF PAYMENT DUE DATE FALLS ON SUNDAY OR MONDAY BANK
HOLIDAY IN NEW YORK, PAYMENT SHALL BE MADE ON THE FIRST FOLLOWING
BANKING DAY IN NEW YORK.
9)INSURANCE SHALL BE COVERED BY BUYER.
10)TELEX COMMERCIAL INVOICE AND TELEX LETTER OF INDEMNITY ARE
ACCEPTABLE.
11)THE VALUE OF THIS LETTER OF CREDIT WILL AUTOMATICALLY
ESCALATE/DE-ESCALATE IN ACCORDANCE WITH THE PRICE CLAUSE WITHOUT
FURTHER AMENDMENT ON OUR SIDE.
-------------------------- Message Trailer --------------------------
{MAC:E1DD7B7F}
{CHK:57F5E7283ADE}
PKI Signature: MAC-Equivalent
-------------------------- Interventions --------------------------

Category    : Network Report
Creation Time : 17/04/08 18:27:42
Application  : SWIFT Interface
Operator    : SYSTEM
Text
{1:F21BBRUCHGTAXXX2407003839}{4:{177:0804171827}{451:0}}

```
-------------------- Instance Type and Transmission --------------
Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status  : Network Ack
Priority/Delivery   : Normal
Message Input Reference        : 1636 080418BBRUCHGTAXXX2408004410
------------------------- Message Header ------------------
Swift Input              : FIN 707 Amendment to a Doc Credit
Sender        : BBRUCHGTXXX
         ING BELGIUM NV/SA, BRUSSELS, GENEVA BRANCH (FORMER
         GENEVA CH
Receiver       : BNPASGSGXXX
         BNP PARIBAS - SINGAPORE BRANCH
         SINGAPORE SG
------------------------- Message Text -----------------------
 20: Sender's Reference
    DOC-641816-G3
 21: Receiver's Reference
    UNKNOWN
 31C: Date of Issue
    080417
 30: Date of Amendment
    080418
 26E: Number of Amendment
    01
 59: Benefic'y (before amndmt)-Nm&Add
    SK ENERGY ASIA PTE LTD
 79: Narrative
    AMEND THE BENEFICIARY'S NAME ON THE L/C AND L.O.I
    TO 'SK ENERGY INTERNATIONAL PTE LTD'

    UNDER FIELD 41D: DELETE 'BY DEF PAYMENT', INSERT
    'BY NEGOTIATION'

    UNDER FIELD 42P: DELETE 'AT 30 DAYS AFTER B/L (B/L
    TO COUNT AS DAY O)', INSERT 'AT 30 DAYS FROM B/L
    DATE (B/L DATE TO COUNT AS DAY ONE)'

    ALL OTHER TERMS AND CONDITIONS REMAIN.

    BEST REGARDS.

    L/C DEPT - G3 - DA
------------------------- Message Trailer ----------------------
{MAC:C4A6FA51}
{CHK:2C58BE6D565A}
PKI Signature: MAC-Equivalent
------------------------- Interventions ----------------------
Category     : Network Report
Creation Time : 18/04/08 16:36:55
Application   : SWIFT Interface
Operator      : SYSTEM
Text
{1:F21BBRUCHGTAXXX2408004410}{4:{177:0804181636}{451:0}}
```



## Owners: Dynamic Express

- **View Current Owners**
- **View Owner History**

- Beneficial Owner:
  - **Mitsui O.S.K. Lines Ltd (MOL)**
  - Since: After 02 January 1999

- Commercial Operator:
  - **Mitsui O.S.K. Lines Ltd (MOL)**
  - Since: After 01 January 1999

- Registered Owner:
  - **Proton Transport S.A.**
  - Since: After 01 January 1993

- Technical Manager:
  - **Mitsui O.S.K. Lines Ltd (MOL)**
  - Since: After 01 January 1999

- Third Party Operator:
  - **Thome Ship Management Private Ltd**
  - Since: Before 31 December 1995

If this data is incorrect, click here to provide feedback

© 2008 Informa plc, All rights reserved.

Terms & Conditions | Privacy Statement

Lloyd's and the crest are the registered trade marks
of the Society incorporated by the Lloyd's Act 1871 by the name of Lloyd's

This site is owned and operated by Informa plc ("Informa") whose registered office is Mortimer House,

37-41 Mortimer Street, London, W1T 3JH.
Registered in England and Wales Number 3099067

**20**

**Vessel Information > Vessel Particulars**

| Vessel Name : | CallSign : | Search Again |
|---|---|---|

## Vessel Particulars

**Vessel Name :** DYNAMIC EXPRESS
**Ex Name :**
**Flag :** PANAMA
**Type :** TANKER

**Beam :** 35   **GRT :** 25644
**LOA :** 179   **NRT :** 11349
**CallSign :** 3FJP3   **DWT :** 42253

**Registratrion No :** 20941-
**Reg Valid Till :** 25/08/2009

**Port of Registry :** PANAMA CITY
**Owner :** PROTON TRANSPORT S A

### Future Movement (Piloted Orders)

| From | To | SRT | Pilot On Board Time | TOA | Hgt | Dft |
|---|---|---|---|---|---|---|
| | | | *No Piloted Orders available* | | | |

### History of Previous Calls

| Arrived | Departed | Last Port | Next Port | GDV No | PAX/Crew List | Last PC |
|---|---|---|---|---|---|---|
| Mar 16 2008 8:10AM | Mar 22 2008 8:30PM | KERTEH | HONG KONG | 362323 | N | N |
| Feb 13 2008 8:00AM | Mar 7 2008 7:00AM | BOTANY BAY, NS | KRETY | 348804 | | |
| | | | | 277046 | Y | Y |

Print List      Close Window

## Vessel Information > Vessel Status In Port

| Vessel Name : | | CallSign : | | **Search Again** |
|---|---|---|---|---|

### Vessel Status In Port

**Vessel Name :** DYNAMIC EXPRESS
**Ex Name :**
**Type :** TANKER
**Flag :** PANAMA
**CallSign :** 3FJP3
**GRT :** 25644                **Beam :** 35
**ETA :** Mar 16 2008 8:15AM
**Dec Arrival :** Mar 16 2008 8:10AM
**Rep Arrival :** Mar 16 2008 8:15AM
**Purpose :** Cargo Operation

**Agent :** BLUE HARBOUR AGENCY P/L
**Last Port :** KERTEH
**Next Port :** HONG KONG
**POSN :** DISEMB GRD EAST BOUND
**Status :** VESSEL HAS DEPARTED
**LOA :** 179 M
**ETD :** Mar 22 2008 7:15PM
**Dec Departure :** Mar 22 2008 8:30PM
**Rep Departure :** Mar 22 2008 8:30PM
**Others**

### Movement Status

| | Date/Time | From | To | Remarks |
|---|---|---|---|---|
| 1 | Mar 16 2008 8:15AM | SEA | PEBGB | |
| 2 | Mar 16 2008 8:15AM | PEBGB | AWPB | |
| 3 | Mar 16 2008 6:25PM | AWPB | OTK18 | |
| 4 | Mar 17 2008 8:45PM | OTK18 | AWPB | |
| 5 | Mar 20 2008 4:30PM | AWPB | OTK2 | |
| 6 | Mar 21 2008 2:00PM | OTK2 | OBV1 | |
| 7 | Mar 22 2008 7:15PM | OBV1 | SEAE | Piloted |

**Vessel Particulars**    **Print List**    **Close Window**

Plaintiff:Low Peck Cheng Catherine:10.06.08:1st

## IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

ADM81/2008/K

Admiralty action in rem against the ship or vessel "DYNAMIC EXPRESS" (LR No. 9032680)

Between

1.   ING BELGIQUE SA
     (Switzerland) RC No. 77.186

2.   ING BELGIUM, BRUSSELS, GENEVA
     BRANCH
     (Switzerland) RC No. CH-660-1299001-

...Plaintiff(s)

. And

THE OWNERS AND/OR DEMISE CHARTERERS OF THE SHIP OR VESSEL "DYNAMIC EXPRESS"
(Panama) LR No. 9032680

...Defendant(s)

---

### AFFIDAVIT

---

SEOW HWANG SENG JOHN
CHUA KAI EN
DREW & NAPIER LLC
20 RAFFLES PLACE
#17-00 OCEAN TOWERS
SINGAPORE 048620
TEL:65350733
FAX:06565327149
Ref: JSW/KAI 311026

Filed this 10th day of June 2008

# EXHIBIT 6

# DREW & NAPIER LLC

Advocates & Solicitors • Trademark & Patent Agents

10 June 2008

**BY FAX**
Fax No.: 6533 7029
No. of Pages: 2 + 2

Haridass Ho & Partners
24 Raffles Place
#18-00 Clifford Centre
Singapore 048621

Attention: Mr Augustine Liew

20 Raffles Place #17-00
Ocean Towers
Singapore 048620
ROC No. 200102509E

DID + 65 6531 2415
T + 65 6535 0733
+ 65 9726 0573 (After Hours)
F + 65 6533 3591
+ 65 6535 4906
E john.seow@drewnapier.com
www.drewnapier.com

*WE DO NOT ACCEPT SERVICE OF
COURT DOCUMENTS BY FAX*

OUR REF    JSW/311026

YOUR REF    HDA/S7008/2008/nsk(M)

*This document is confidential and may be privileged. If you are not the intended recipient, please notify us immediately:
you should not copy it or use it for any purpose, or disclose its contents to any other person.*

Dear Sirs,

### ADMIRALTY IN REM NO. 81 OF 2008/K
### M.V. "DYNAMIC EXPRESS"

We refer to your fax of even date. Please take note of the correct file reference for this matter.

Our clients' security demand is as follows:-

| | | |
|---|---|---|
| (1) | Principal claim: | US$27,963,036.41 |
| (2) | Interest at 5.33% p.a. for 3 years: | US$4,471,289.52 |
| (3) | Legal costs: | US$600,000.00 |
| | **Total :** | **US$33,034,326.00** |

The wording for the security is also attached. Your clients' security should be by way of a 1st class bank guarantee from a bank in Singapore acceptable to our clients or a Letter of Undertaking from a P& I Club belonging to the International Group.

For the avoidance of doubt, until or unless we have expressly in writing confirmed that an agreement has been reached between the parties on the security amount and wording of the guarantee, nothing herein and/or in subsequent correspondence between the parties shall be construed as any agreement having been reached between the parties with regard to the provision of security in this matter. All our clients' rights are expressly reserved including their right to amend the wording of the security and to revise the security amount upwards if necessary.

DREW & NAPIER LLC is a law corporation with limited liability

DREW & NAPIER LLC
Page 2 of 2
10 June 2008

We await hearing from you on the provision of security.

Yours faithfully

Drew & Napier LLC
(John Seow)

enc

## BANK GUARANTEE / LETTER OF UNDERTAKING

To:     ING Belgique SA of Avenue Marnix 24, 1000 Brussels, Belgium &
        ING Belgium, Brussels, Geneva Branch of Rue Petitot 6, 1204 Geneva,
        Switzerland who are the Plaintiffs in Admiralty in Rem No. 81/2008/K
        in the High Court of the Republic of Singapore
        c/o Drew & Napier LLC
        20 Raffles Place, #17-00 Ocean Towers
        Singapore 048620

Dear Sirs,

RE:     **ADMIRALTY IN REM NO. 81/2008/K**
        **CLAIM ARISING OUT OF AND IN CONNECTION WITH THE BILL OF**
        **LADING B/L NO. 1 DATED 28 APRIL 2008 IN RESPECT OF THE**
        **"DYNAMIC EXPRESS"**

IN CONSIDERATION of your at our request releasing and/or refraining from arresting
or otherwise detaining the ship or vessel "DYNAMIC EXPRESS" in respect of and/or
arising from and/or in connection with the captioned claim and proceedings (in Admiralty
in Rem No. 81/2008/K) against the Owners of the ship or vessel "DYNAMIC
EXPRESS" ("the Defendants"),

We, _____,
DO HEREBY irrevocably and unconditionally guarantee to pay to you or to your order
within 7 days upon receiving your first written demand any sum(s) found to be due to
you, together with interest and costs, in the captioned proceedings or any appeal
therefrom, or agreed between the Defendants and yourselves, PROVIDED ALWAYS
that our entire liability under this Guarantee shall not exceed the sum of USD_____
(United States Dollars _____) inclusive of
interest and costs.

We hereby further agree that this Guarantee shall equally apply to any compromise or
settlement between the Defendants and yourselves in the captioned proceedings or any
appeal therefrom, or to any admission of liability or any amount by way of damages,
interest and costs agreed by the Defendants to be paid in the captioned proceedings or
any appeal therefrom, or assessed by the Court(s) after any admission of liability by the
Defendants, so that if the Defendants shall not pay such amounts on demand, we shall be
liable for the same in the same manner as if it had been so adjudged by the Court(s).

- 1 -

We further warrant that we are authorized by the Owners of the ship or vessel "DYNAMIC EXPRESS" to warrant to you that the ship or vessel "DYNAMIC EXPRESS" was not demise-chartered at all material times.

We hereby further agree that when and so far as it may be necessary for any instrument or order issued by the Court(s) to be served on us in any proceedings taken for the enforcement of this Guarantee, the service of such instrument or order on us by leaving the same at the registered office of _____,
shall be in all respects as operative and effective as if the same were our principal office, and such instrument or order had been served on the officer in charge of the same.

We hereby further agree that this guarantee shall be a continuing guarantee until the final determination of your claim(s), and the granting of any time or any other indulgence to the Defendants in the captioned proceedings or any appeal therefrom, or in any proceedings taken for the enforcement of this Guarantee, by you, your servants or agents shall not in any way prejudice your rights herein [or Bank to provide evergreen renewal clause].

We hereby further undertake to submit to the exclusive jurisdiction of the Courts of Singapore for the purpose of any proceedings taken for the enforcement of this Guarantee, which shall be governed by and construed in accordance with the laws of the Republic of Singapore.

Dated this        day of        2008.

Yours faithfully,

-2-

# EXHIBIT 7



3ª Floor, 11-12 Hanover Street, London, W1S 1YQ U.K.
Tel: +44 (0)20-7495-0956    Fax: +44 (0)20-7495-1052

June 5, 2008

Projector Asia Pte. Ltd.
2 Battery Road
#22-01 Maybank Tower
Singapore 049907
Attention:    Teo Thong Soon/ Director
                   Woo Suk Jang/ Manager
TEL: +(65) 6826-0118
FAX: +(65) 6826-0122


CC:
Projector SA
35A Regent Street,
Belize City,
Belize
Attention: Paul Leone/ CEO
              Michael Kennefick/ CFO
TEL: +(44-20) 7659-9500
FAX: +(44-20) 7659-9501


**RE: Letter of Indemnity given by Projector Asia Pte Ltd (on behalf of Projector SA)
dated 28 April 2008 in respect of the "Dynamic Express"**


Dear Sir:

We refer to the above letter of indemnity (referred to below as the "LOI").

We regrettably notify you that the Dynamic Express ("Vessel") may be arrested in Singapore
at Vessel's next call there scheduled on or around 10 June 2008, for the reasons of execution
of a writ to be filed by one or more ING Bank group companies (collectively "ING") against
Vessel.

As you are well aware, pursuant to your request, Vessel discharged and released the cargo
either to LG Chemical Ltd. at Daesan, Korea and/or to Korea Petrochemical Industry Co., Ltd.
at Onsan, Korea in exchange of the LOI, which was submitted to us by Projector Asia Pte.
Ltd. (on behalf of Projector SA) ("Projector") on 28 April 2008 without the production of the
original bills of lading for 28,831.588MTS of Naphtha ("Cargo").

1

The LOI sets out various duties, obligations and indemnifications with regards to the above-mentioned cargo release.

We understand that you intervened in the transaction of the Cargo between its shippers and its consignees, and now we strongly fear that some settlement of the cargo value has not yet successfully been completed due to the recently reported financial difficulty of you.

One of the tankers operated by Mitsui O.S.K. Lines, Ltd., "Morning Express", has been arrested through a writ filed by ING Bank group companies (collectively "ING") in Singapore since 30 May 2008 for the reasons that due transaction and settlement of the cargo carried by the vessel was seemingly interrupted due to insolvency by Projector. The vessel was committed to cargo release in exchange of another letter of indemnity in lieu of production of the original bills of lading, much like this case, and ING claims that the original bills of lading in question for this transaction are lawfully in the possession of ING.

For the above-mentioned reasons, we are seriously concerned that the Vessel faces a serious threat of arrest by ING in Singapore in the imminent future. So we hereby emphatically request you to comply with all the terms of the LOI, including but not limited to, provision of bail or security in accordance with the demand by ING in an immediate fashion so that arrest of the Vessel can be prevented in advance. Also we would urge you to advise us immediately if and when you become reasonably confident that the fear or threat of the Vessel's arrest shall disappear, for reasons, such as that ING informs you that they won't or will quit in the arrest of the Vessel.

Furthermore, we shall reserve all our rights and interests granted to us under the LOI, which include but are not necessarily limited to your indemnification to us for any liability, loss, damage or expense incurred by us due to threatened or actual arrest of the Vessel and/or the discharge of the Cargo without the original bill of lading, as per the terms of the LOI.

We lastly emphasize that your prompt and serious action and effort are required in order to avoid circumstances unfortunate and unfavourable for both of us, such as the arrest of the Vessel.

Best Regards,

Y. S. Hwang
Managing Director

SK Energy Europe Ltd.
3rd Floor 11-12 Hanover Street, London W1S 1YQ
United Kingdom

2

# EXHIBIT 8



**Panasonic Projectors** on SALE! Shop N
PLUS! GET OUR HUGE 400 PAGE CATALOG!

## The Premium Business Information Source™

my purchases

Search by  ■ Keyword  ■ company  ■ publisher  ■ country  ■ industry    Search:

## D&B

### REPORT OVERVIEW

| | |
|---|---|
| **Title:** | PROJECTOR S.A. (SINGAPORE BRANCH) (Subsidiary and Single location) |
| **Price:** | $4.00 |
| **Report Type:** | D&B Business Overview |
| **Description:** | Contains basic contact information, industry classifications and names of executives. |
| **Address:** | 2 Battery Road #22-01 Maybank Tower<br>SINGAPORE SINGAPORE 04990 |
| **Telephone:** | 0065 - (682) 601 |
| **Related Report(s):** | ■ International Business Information Report (IBIR): $443.00<br>A source of data that can help in performing critical analysis of a business operations, profitability and stability.<br>■ Family Tree Report (no branches): $75.00<br>Provides linkages between all parent companies and related subsidiaries. |
| **Format:** | HTML |
| **Free Sample:** | Click Here to Download |

**PURCH**

**P**

**Looking For**
Search the

**Epson Powerlite Projector**
Revolutionize your conference rooms w/
3LCD Powerlite technology!
V V

**Powerlite 1810p Projector**
Buy from an Authorized Dealer And
Authorized Service Center

Ads by Google



Every day, you make decisions that impact the profitability of your business. Whether these decisions are about managing ris managing your supply base, there is one constant that runs through all of them - data. Dun & Bradstreet's world-class database you cleanse, renew and enhance your current information and keep it up to date.

about us | contact us | public company index | private company index | pcan | widget | your privacy rights | terms & c

Copyright © 2008 Alacra, Inc., 100 Broadway, Suite 1100, New York, NY 10005. All rights reserved.
Reproduction in whole or in part in any form or medium without express written permission is prohibited.

Travel Guide & Maps :   **Singapore - Indonesia - Malaysia**          **UK Flower Delivery - Private Tuition**



**Existing Members Login**          **S'pore Weather**
New member sign up - FAQ          26° C, Broken Clo...          Select More Services

📢 **15 June 2008 is Fathers Day** : **Fathers Day Gifts** from Flower Advisor. We deliver Worldwide!

S'pore Map    Jobs    Images    S'pore Guide    SD Editorials    Food Advisor    Business Finder    Classifieds    **more »**

**Search any Business :**
**in Singapore**                    ● Product    ○ Company          **Premium Listings**
Make Your Listings more Visible!

*www.businessfinder.com.sg*

**Overview**      **Product Listings**                    **Submit**          **Business Editorials**

**Projector Asia Pte Ltd**          View Company Listings by Alphabetical Order
*Singapore Company Search*          A B C D E F G H I J K L M N O **P** Q R S T U V W X Y Z

### More Information About : Projector Asia Pte Ltd

#### General Information

| | | |
|---|---|---|
| Company Name | : | Projector Asia Pte Ltd |
| Product Category | : | Petroleum Products |

| | | |
|---|---|---|
| Address | : | Maybank Tower |
| | | 2 Battery Road #22-01, |
| | | Singapore 049907 |
| | | *Located @ Raffles Place* |

**GoboTop**
Project Any Image With The World's Smallest
Low-Voltage Projector
▼ ▼          Ads by **Google**

| | | |
|---|---|---|
| Phone | : | 68260118 |
| Fax | : | 68260122 |
| Email | : | Email to Projector Asia Pte Ltd |
| URL | : | N/A |

*View All Listings in Petroleum Products Category : 1 - 2 - 3 - 4 - 5 - 6 - 7 - 8*
*- 9 - 10 - 11*

#### Editorials Related to "Petroleum Products"

- Medical Information Products
- Hair Loss Products For Men
- Hair Replacement Products
- Best Hair Regrowth Products

- Hair Loss Products
- Hair Thinning Products
- Hair Restoration Products
- Top Hair Loss Products

- Products For Hair Growth
- Regrow Hair Products
- Products For Hair Loss
- Best Hair Loss Products

✓ **SD Editorials**
*Your Weekly Tips*



Maybank Tower



Imagery ©2008...

Enlarge Singapore Satellite Image